**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles T. JACKSON, Defendant-Appellant.**

**No. 71–1500**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

260

William W. Cowan, Robert W. Coleman, Atlanta, Ga., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Robert L. Smith, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this his direct appeal from conviction for violating 18 U.S.C.A. § 287,[1] for having presented a false claim for military pay at Fort McPherson, Georgia on May 20, 1970, the defendant, Charles T. Jackson, asserts the Court erred in: (i) admitting or not striking the testimony of the Government's fingerprint expert, (ii) admitting into evidence a certain photograph (an army mug-shot) of the defendant, and (iii) admitting evidence concerning a similar crime which occurred on the same day in another part of the state. The defendant's acts consisted of obtaining a substantial payment from the Department of the Army by presenting spurious orders, a spurious casual payment slip and a spurious identification card to the military pay clerk at Fort McPherson, Georgia.

### Expert Testimony

The defendant argues that the Government fingerprint expert's testimony that latent fingerprints found on the army claim forms used in procuring the payment were the defendant's was inadmissible because the comparison was initially made with the defendant's military service prints which were on file in Washington D.C., but not produced at the trial. The defendant argues that since this comparison was the basis of the expert's opinion concerning the prints and since the military service card was not introduced into evidence,

no proper predicate was laid for such testimony.[2]

There can be, of course, no question that the witness was qualified as an expert in his field. Working in his capacity as an FBI fingerprint specialist, he had made several hundred thousand such fingerprint comparisons. The record clearly demonstrates the methods utilized by the expert in arriving at his opinion that the claim form prints were the defendant's. Although he stated that after the initial comparison with the military service prints he had reached his initial conclusion, he emphatically stated that his final opinion was reached by comparing the post-arrest fingerprints with the claim form prints and was of the opinion that they were made by the same person.[3] Although the expert used notes he made during the initial comparison with the Washington prints to refresh his memory while testifying about the similarity of the claim form prints and the post-arrest prints, we find no error in such use. United States v. Williams, 5 Cir., 1971, 447 F.2d 1285.

This court has held that the reliability or truthfulness of a statement used to refresh a witness' memory concerns *only* the weight and credibility to be accorded the witness' testimony. Thompson v. United States, 5 Cir., 1965, 342 F.2d 137, cert. denied, 381 U.S. 926, 85 S.Ct. 1560, 14 L.Ed.2d 685. The use of the notes made during the initial comparison was a matter for the jury in determining the weight to be given the expert's testimony.

---

1. 18 U.S.C. § 287 in pertinent part provides:

"Whoever makes or presents to any person or officer in the * * * military * * * service of the United States, * * * any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined * * * or imprisoned * * * or both."

2. Defendant's argument in this regard concerning the "best evidence" rule is without merit since in Federal Courts this

rule is "limited to cases where the contents of a writing are to be proved." Meyers v. United States, 1949, 84 U.S. App.D.C. 101, 171 F.2d 800, 812, cert. denied, 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076. See Blachly v. United States, 5 Cir., 1967, 380 F.2d 665.

3. It was stipulated that the post-arrest fingerprints were genuine and those of Defendant. They were, of course, clearly admissible. See Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; Redd v. Decker, 5 Cir., 1971, 447 F.2d 1346.

*The Defendant's Photograph*

■ The Government introduced a photograph, an army mug-shot of defendant in a military uniform. Because the picture apparently showed identifying numbers across his chest, the identification numbers were covered with a piece of bandaid tape. The introduction of such a photograph, even with the identification numbers covered, prejudiced the defendant, so he asserts, because it informed the jury that he had been previously involved somehow with the governmental authorities. We agree with the Government's position that even if the photograph might otherwise be thought prejudicial, the defendant's testimonial admission that he had been convicted by a General Court Martial of an offense identical to that for which he was charged, removed any real harm. People v. Ford, 175 Cal.App.2d 109, 345 P.2d 573; cf. Roper v. United States, 5 Cir., 1968, 403 F.2d 796.

■ Apart from its prejudicial effect, defendant argues that the Trial Court erred in not following the procedure for the admission of photographic identification evidence which is outlined in United States v. Sutherland, 5 Cir., 1970, 428 F.2d 1152. This argument we find also to be without merit. Strict requirements are not imposed by *Sutherland* for such admission. Rather it suggests certain procedures concerning the admission of identification testimony when a "Simmons issue" is present.[4] The defendant did not raise such an issue during the trial of this case so it is hardly available to him. See Bond v. United States, 10 Cir., 1968, 397 F.2d 162, cert. denied, 393 U.S. 1035, 89 S.Ct. 652, 21 L.Ed.2d 579; United States v. Hayes, 5 Cir., 1971, 444 F.2d 472; United States v. Fuentes, 5 Cir., 1970, 432 F.2d 405; Rotolo v. United States, 5 Cir., 1968, 404 F.2d 316. His only objection was that the photograph was "prejudicial on its face"—a complaint about the crudely excised identifying numbers, not the impermissibly suggestive effect or use of the picture in investigation or proof.

*Testimony Concerning the Similar Offense at Fort Gordon*[5]

■ This contention starts on a sound ground. For this Court has recognized as recently as United States v. Pittman, 5 Cir., 1971, 439 F.2d 906, 908, that "as a general rule, in a criminal case, 'the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' " (Quoting, C. McCormick, Handbook of the Law of Evidence § 157 at 327 (1964); See Roe v. United States, 5 Cir., 1963, 316 F.2d 617.)

■ But by instructions which limited its use by the jury—including that in the Court's charge—to which no objection was registered, the evidence concerning the Fort Gordon incident was admitted for the specific limited purpose of demonstrating similarity of method, similarity of mode of operation, which

4. Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. The Court in *Simmons* held that convictions which are based on eye witness identifications at trial which are preceded by pretrial photographic identification will be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253.

5. The act for which the defendant was convicted took place on the morning of May 20, 1970. On that same day, in the afternoon, a similar invalid claim for payment was made at the finance office at Fort Gordon, Georgia, approximately 160 miles away. Both acts were committed by a young Negro who presented an identification card bearing social security number 565–56–4937 and who represented himself to be Charles T. Jackson. At both offices, the man's signature was compared with that on the identification card and found to be satisfactorily similar. Also, at both offices the man presented apparently valid pay orders originating from Fort Ord, California.

might "shed some light on the identity" of the defendant as the man who committed the criminal act at Fort McPherson. The Court's instructions and charge concerning the evidence not only covered mode of operation but also clearly encompassed the issue of identity.[6] It is well recognized that evidence of subsequent conduct is admissible to show *modus operandi*, United States v. Bey, 3 Cir., 1971, 437 F.2d 188, 191, citing, Parker v. United States, 9 Cir., 1968, 400 F.2d 248, cert. denied, 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed.2d 789; United States v. Laurelli, 3 Cir., 1961, 293 F.2d 830, cert. denied, 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392; United States c. Prince, 3 Cir., 1959, 264 F.2d 850; United States v. Stirone, 3 Cir., 1958, 262 F.2d 571, rev'd on other grounds, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, and identity. Theriault v. United States, 5 Cir., 1968, 402 F.2d 792, cert. denied, 395 U.S. 965, 89 S.Ct. 2110, 23 L.Ed.2d 751.

Of course identity was very much an issue. The defendant brought from Ferriday, Louisiana, approximately 500 miles from Fort McPherson, three persons who swore he was there, not in Georgia, on May 19th and 20th. Two of the witnesses were equivocal about dates, but one gave about the most positive sort of alibi evidence since it was that of his girlfriend who positively insisted for those two nights she was with him in her family's home.

██ Additionally the Court's limiting instruction encompassed as well the use of this testimony to show similarity in method in this unique criminal activity. Since the evidence was ultimately found by the trial court to be admissible, the defendant was not prejudiced by the fact that a hearing out of the presence of the jury was not held to determine its admissibility. Ballard v. Nelson, 9 Cir., 1970, 423 F.2d 71.

Affirmed.

6. In the formal charge the Judge stated:

"[T]he only reason I've let in other occurrences, as I previously told you, is that if there be such a similarity of method, sometimes that may shed some light—sometimes it doesn't—sometimes it may shed some light or indicate in some fashion that the two offenses were committed by the same person, because the method of their commission was alike."

He had earlier indicated after the attorneys had brought up this question in their opening arguments:

"[B]ut sometimes in criminal offenses, one's method of doing things, of painting a portrait or of laying fancy brickwork or of committing a crime, the methods and artistry involved are so similar that you can almost say from looking at two of them that the same hand did both of them.

"In other words, similarity of method, similarity of mode of operation is sometimes almost like a trademark of its author."

When the first of such testimony was elicited he repeated substantially the same thing.