**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard ALSTON, Defendant-Appellant.**

**No. 71-3477**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 18, 1972.

Rehearing Denied June 1, 1972.

* ▮ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

**50**

A. J. McNamara, New Orleans, La. (Court appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Patrick C. Mc-Ginity, Asst. U. S. Attys., New Orleans, La., Harry R. Hull, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

■ Although there are four targeted errors in this appeal, the most vexatious involves the right of a trial court to stifle factual disclosures without demonstrable significance to a defendant but danger-laden to the witness. Appellant, Richard Alston, was convicted by a jury of selling heroin in violation of 26 U.S. C.A. §§ 4704(a) and 4705(a).[1] He appeals that conviction on four grounds: (1) that a federal narcotics agent who testified against Alston should have been required to divulge his home address on the witness stand; (2) that the trial judge incorrectly admitted evidence of alleged criminal conduct by Alston that took place prior and subsequent to the alleged criminal offense under indictment; (3) that tape recordings of conversations between the undercover agent and Alston were introduced into evidence without proper authentication; and (4) that the admission of evidence concerning a prior narcotics sale for which Alston was under indictment in another federal jurisdiction violated Alston's Fifth Amendment right against self-incrimination. Finding each of Alston's allegations without merit, we affirm his conviction.

Agent Allen Johnson, who had worked undercover as "Allen Jackson" in the arrest of Alston, testified at some length and was subject to vigorous cross-examination at the trial. The only information regarding his background that Agent Johnson refused to divulge on the stand was his home address. Defense counsel requested that information, and Johnson demurred. The Government objected and the very able district judge interrupted the trial proceedings to confer with counsel. Following that conference, the trial judge sustained the Government's objection to the question, and defense counsel continued his cross-examination without comment. Agent Johnson's testimony is critical to the Government's case against Alston, and Johnson must be properly and sufficiently "placed" as any other witness in

---

1. "It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."
26 U.S.C.A. § 4704(a).

\* \* \* \* \*

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."
26 U.S.C.A. § 4705(a).

order to allow Alston the maximum exercise of his Sixth Amendment right of confrontation. *See* Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314. The question before this court is whether or not Alston's Sixth Amendment right to confront witness Johnson was abridged in the circumstances of this trial by the trial judge's failure to require the witness to divulge his home address. The strength of Alston's proposition rests entirely on two Supreme Court decisions, Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L. Ed. 624, and Smith v. Illinois, 1968, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956. Finding those decisions inapposite to the circumstances of this case, we conclude that Johnson was not required to divulge his home address.

It is true, as Alston urges, that both *Alford* and *Smith* reversed criminal convictions because the home address of a witness was not divulged. But it appears to us that the purpose of *Alford/Smith* was to safeguard the opportunity for a meaningful and open cross-examination, not to require that a witness always divulge his or her home address. *Alford* and *Smith* do not erect a per se requirement that a witness' home address be divulged upon demand:

> "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. . . . There is a duty to protect him [the witness] from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him."

Alford v. United States, 282 U.S. at 694, 51 S.Ct. at 220, 75 L.Ed. at 629, reaff'd Smith v. Illinois, 390 U.S. at 133, 88 S. Ct. 748, 19 L.Ed.2d at 959–960. In *Smith*, a narcotics case, a Government informer who was allegedly a narcotics addict himself refused to divulge not only his home address but also his real name. Faced with a witness who testified only under an alias and who did not have an existing occupation at the time of the trial, the defense was left with absolutely nothing on which to base an effective cross-examination for purposes of contradiction or impeachment of the Government's primary witness. In *Alford*, the Supreme Court was careful to point out that the witness in question might have been incarcerated himself at the time of his testimony, obviously a significant reflection on his credibility. As in *Smith*, the defendant in *Alford* was faced with a witness who could not be identified either with his occupation at the time of the trial or with his home neighborhood, and the right to confront the witness by means of cross-examination was substantially impaired.

▮▮▮▮ The substance of *Smith* and *Alford* is to assure the admission of background that is "an essential step in identifying the witness with his environment," Alford v. United States, 282 U.S. at 693, 51 S.Ct. at 220, 75 L.Ed. at 628. The crucial underpinning of that substance is the likelihood of prejudice to the defendant:

> "Prejudice ensues from a denial of *the opportunity to place the witness in his proper setting* and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them [the facts of the case]."

Alford v. United States, 282 U.S. at 692, 51 S.Ct. at 219, 75 L.Ed. at 628. [Emphasis added.] Although in both *Smith* and *Alford* the defense erected on appeal a substantial likelihood that significant evidence might be gleaned from a knowledge of the witness's home address, the opinions in both *Smith* and *Alford* make clear that a defendant need not establish that an undeveloped line of questions foreclosed by a Government objection would necessarily lead to a disclosure of contradictory or impeaching material against the witness.[2] The critical ques-

2. A line of inquiry is often "necessarily exploratory," and "[i]t is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though

tion is not simply whether or not the witness has divulged his home address, information that admittedly could sometimes lead to facts relevant to contradiction or impeachment, but whether or not the defendant has been given sufficient "opportunity to place the witness in his proper setting," Alford v. United States, 282 U.S. at 692, 51 S.Ct. at 219, 75 L. Ed. at 628. Thus, while a witness would normally be required to answer all questions regarding his or her background, there are exceptions to that requirement. The witness should have the opportunity to demonstrate to the trial judge that his or her home address does not constitute information necessary to "place the witness in his proper setting." Put another way, the witness should have the opportunity to demonstrate to the trial judge that the defendant's solicitation of his or her home address constitutes only an attempt to "harass, annoy or humiliate." We think that a reasonable interpretation of this area of exception, acknowledged by *Smith* and *Alford*, to the usual requirement that the witness divulge background information would include an instance in which the physical safety of the witness or his family might be endangered by disclosure. *Accord* United States v. Caldarazzo, 7 Cir. 1971, 444 F.2d 1046; United States v. Palermo, 7 Cir. 1969, 410 F.2d 468; United States v. Daddano, 7 Cir. 1970, 432 F.2d 1119, cert. denied, 402 U.S. 905, 91 S.Ct. 1367, 28 L.Ed.2d 645; United States v. Lawler, 7 Cir. 1969, 413 F.2d 622, cert. denied, 396 U.S. 1046, 90 S.Ct. 698, 24 L. Ed.2d 691; United States v. Lee, 7 Cir. 1969, 413 F.2d 910, cert. denied, 396 U. S. 1022, 90 S.Ct. 595, 24 L.Ed.2d 515; United States v. Teller, 7 Cir. 1969, 412 F.2d 374, cert. denied, 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118; United States v. Baker, 2 Cir. 1969, 419 F.2d 83 cert. denied, De Norscio v. United States, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271; United States v. Persisco, 2 Cir. 1970, 425 F.2d 1375, cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108; United States v. Marti, 2 Cir. 1970, 421 F.2d 1263; see also Smith v. Illinois, supra (White, J., concurring). The spectrum of cross-examination is wide and long but it is not infinite in scope. The trial court must have some authority to armor a witness against extra-judicial weaponry.

■ We hold that the district judge did not abuse his discretion when he concluded (1) that Alston had quite sufficient opportunity to "place the witness [Johnson] in his proper setting," and (2) that Johnson's objection to divulging his home address was, under the circumstances, a reasonable fear for his own or his family's physical safety. Agent Allen Johnson was identified as a 31-year old narcotics agent, who had worked as an undercover agent with the Bureau of Narcotics and Dangerous Drugs (BNDD) for almost two years in and around the New Orleans area. His duties as undercover agent were well defined in the testimony. He was identified as a college graduate who had served with the Army and with the Mississippi State Employment Service immediately prior to joining the BNDD coterie. Johnson's BNDD supervisor was identified by name and was present in the courtroom during the trial. Johnson disclosed the alias under which he had worked during the two-year period in New Orleans ("Allen Jackson"), and the fact that he had maintained a residence on Toledano Street in New Orleans as "Jackson." He also produced under questioning the telephone number that he had used in his conversations with Alston, a telephone number known to Alston. The only element of his background, occupation, and existing situation that Agent Johnson did not reveal

he is unable to state to the court what facts a reasonable cross-examination might develop."
Alford v. United States, 282 U.S. at 692, 51 S.Ct. at 219, 75 L.Ed. at 628, reaff'd,

Smith v. Illinois, 390 U.S. at 132, 88 S. Ct. 748, 19 L.Ed.2d at 959.

was his actual home address. We conclude that, for purposes of the Sixth Amendment, a witness may be constitutionally "placed" through disclosure of his or her occupational background and existing occupational circumstances without concomitant disclosure of a home address, if there is sufficient reason advanced by the witness for non-disclosure and unless the defendant raises sufficient likelihood that disclosure of the home address would provide a significant avenue for additional cross-examination. Unlike the defendants in *Smith* and *Alford*, Alston could readily "place" Agent Johnson within the context of his occupation.

It is significant here that Johnson is an agent, not an informer. In almost every other case of this ilk, the witness whose address is requested is merely an informer, one who is under absolutely no obligation to provide information and who is subject to no official supervision. See United States v. Lawler, *supra*; United States v. Lee, *supra*; United States v. Teller, *supra*; United States v. Baker, *supra*; United States v. Daddano, supra; Smith v. Illinois, *supra*. In *Smith*, for example, there was testimony indicating that the informer/witness was a drug addict himself, a fact which might have been brought out had the trial court allowed production of his address. Smith v. Illinois, *supra* (Harlan, J., dissenting). This is not to say that an informer might not have a substantial fear of reprisal and a substantial interest in keeping his home address as non-public as possible. *See, e.g.*, United States v. Persico, a trial that involved the New York "underworld." It is to say only that there appears to be less need to require a home address for an identified agent of the BNDD than there might be for a witness whose motives or background might be subject to considerably less supervision and correspondingly greater doubt. A similar point might be made regarding the witness in *Alford*, who, although not an informer, was also not an agent. He was a former employee of the defendant, allegedly in prison himself at the time of the trial. The *Alford* witness, like the *Smith* witness, could not be "placed" within a milieu of supervision, training, and authority, as could an undercover agent. In *Alford* and *Smith* there was the possibility of a Man in the Iron Mask masquerade. But Agent Johnson was only permitted to mask his address, a fact difficult to maximize as so important to the defense as to mandate reversal.

Of course, it should be the Government that comes forward with an explanation of its objection to the divulging of an address by any witness. *See* Smith v. Illinois, *supra* (White, J., concurring); United States v. Marti, *supra*. In this case, however, the colloquy between opposing counsel and the trial judge regarding the subject of Johnson's address was entirely off the record. While we do not know precisely what transpired at that conference, we do know from the record that Agent Johnson was involved at the time of the Alston trial in several other cases as an undercover agent. His continuing involvement would give rise to a reasonable inference regarding the gist of the trial judge's conversation with counsel. More important, the fact that Agent Johnson was still involved in ongoing undercover work would give rise to a reasonable inference on appeal that his objection to divulging his home address unless "absolutely necessary" was within the excepted areas of *Alford* and *Smith*. Undercover work, particularly in the narcotics area, is a dangerous business, a fact that this court feels compelled to notice. In addition, Agent Johnson's continued involvement in other cases might make him apprehensive that defendants in pending cases or their accomplices might try to use his home address to the discomfiture of his family. Johnson's hesitation was understandable and justifiable under *Smith* and *Alford*, and the trial judge did not abuse his discretion by crediting that hesitation and refusing to require the submission of the agent's home address.

We also note, from an analysis of defense counsel's extensive and able cross-examination, that lack of Agent Johnson's home address does not appear to have constituted any prejudice whatsoever to Alston's ability to "place the witness" for purposes of qualification, contradiction, and impeachment. *See* United States v. Teller, *supra*; United States v. Lawler, *supra*; United States v. Lee, *supra; see also* United States v. Bennett, 2 Cir.1969, 409 F.2d 888, cert. denied, Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101, which requires that the defendant demonstrate to the trial judge a "particularized need" for the home address of a witness before production of that address is required. Counsel for Alston appears to have felt that the address matter was of little importance during the cross-examination of Johnson, for the record discloses that he failed to object to the district court's ruling after the district judge had consulted with both counsel at the bench.

In the instant case, Agent Johnson was clearly and substantially "placed" in his occupational setting as it existed prior to the arrest, during the arrest, and at the time of the trial. He advanced significant reason for non-disclosure of his home address, based on a reasonable fear for the safety of his family during his continuing activity as an undercover narcotics agent and witness in pending trials. And Alston has offered neither demonstration nor even allegation that the denial of Johnson's home address gave rise to any actual prejudice to his case. Under these circumstances we conclude that the trial judge did not abuse his discretion when he found that the identification of Agent Johnson was constitutionally sufficient to "place the witness in his proper setting" and to afford Alston his Sixth Amendment rights.

In most cases, exploration and fishing expeditions should permit trolling for the domiciliary facts. But there are rare exceptions, and the trial judge was within his permissible discretion when he cut possibly-poisonous bait and limited Alston's catch of Johnson's domiciliary facts. On some occasions, though they be as rare as museum pieces, a court must see that witnesses are not in terrorem. We do not think that *Smith* and *Alford* wrote an inflexible rule for all times, all seasons, and all witnesses.

Because *Smith* and *Alford* discuss the divulging of a witness's home address with some specificity, we have discussed Alston's case with equal specificity in reaching our conclusion that, under the circumstances of this case, disclosure of Johnson's home address was not constitutionally required. As an alternative holding, however, we also conclude that the failure of the trial judge to force disclosure of the agent's home address, if such disclosure is mandated under the Sixth Amendment-*per-Smith/Alford,* amounted to "harmless error," F.R.Crim.Pro. 52(a), "harmless beyond a reasonable doubt," Chapman v. California, 1966, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Even if the alleged error rises to a Sixth Amendment level,

". . . there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

Chapman v. California, 386 U.S. at 22, 87 S.Ct. at 827, 17 L.Ed.2d at 709. Because the information regarding Agent Johnson was sufficient without his home address to "place" him and because Alston has not demonstrated, nor even alleged, that non-disclosure of the address prejudiced him below, we conclude that the absence of that address does not affect Alston's "substantial rights." F.R. Crim.Pro. 52(a), and is therefore harmless. *See also* 28 U.S.C.A. § 2111; F.R. Civ.Pro. 61.

The record is clear that the Government introduced evidence of alleged transactions that took place between Agent Johnson and Alston both before and after the sale that constitut-

ed the indictment in this case. The Government sought to introduce four tape recordings in connection with those prior and subsequent events, and the district judge admitted three of them. As a general proposition, Alston is correct in arguing that the evidence introduced in a criminal trial should relate only to the specific offense under indictment. *See* Morris v. United States, 5 Cir.1941, 123 F.2d 957; Lambert v. United States, 5 Cir.1939, 101 F.2d 960; Williams v. United States, 5 Cir.1923, 294 F. 682. However, it is also settled law that prior or subsequent incidents may be introduced to establish that the defendant possessed the requisite knowledge or intent, United States v. Wilson, 5 Cir.1971, 451 F.2d 209; United States v. Clifton, 5 Cir.1971, 447 F.2d 970, or that there is a consistent pattern, scheme of operation, or similarity of method, United States v. Jackson, 5 Cir. 1971, 451 F.2d 259; United States v. Hayes, 5 Cir.1971, 444 F.2d 472, cert. denied, 404 U.S. 882, 92 S.Ct. 210, 30 L.Ed.2d 163; United States v. Mancuso, 5 Cir.1971, 444 F.2d 691; see generally United States v. Johnson, 5 Cir.1972, 453 F.2d 1195. The substantive evidentiary question here is one of relevance, and we conclude that the testimony regarding prior and subsequent events was relevant to the sale under indictment.[3]

 The bulk of the testimony in question here, including the tape recordings, involved a rather short period of time, from October 25, 1970, to November 30, 1970.[4] The sale for which Alston was convicted took place on November 20, 1970, and the heroin was actually delivered by a third party on November 24. Evidence was introduced regarding an aborted heroin sale between Johnson and Alston, arranged by Alston over the telephone on October 25, 1970, with transfer scheduled for later that month in New York City. When Johnson failed to keep the appointment because he became involved in more pressing undercover activities, Alston telephoned from New York on November 4, 1970, to inquire of Johnson's whereabouts and continued interest in purchasing heroin. The sale was arranged again, and Johnson purchased the heroin as scheduled on November 5, 1970, in New York City. That sale is currently under indictment in the Eastern District of New York. The facts surrounding Agent Johnson's purchase and pick-up of the heroin established a certain "similarity of method" to that employed in the New Orleans delivery of November 24, 1970. *See* United States v. Jackson, *supra*; United States v. Johnson, *supra*. While the two operations were not precisely the same, they correspond in important particulars. The two arrangements were for precisely the same amount of heroin at precisely the same cost ($6,000 for one-eighth kilogram), and both arrangements involved extensive use of third parties to effect the actual delivery of the heroin. More important, the New York transaction of November 20–24 as arranged by a telephone call from Alston to Johnson on November 18, involved a previously-arranged cipher. The similarity and use of the same code words in earlier conversations is very relevant to Johnson's translation of the conversation at the trial. And those prior telephone conversations and the prior sale in New York are sufficiently related in time and method to the New Orleans sale in question here that the testimony could be relevant to Alston's knowledge that the

---

3. In addition, the trial judge gave limiting instructions at the introduction of the evidence in question, specifically stating that the evidence could go only to the questions of Alston's knowledge and any alleged similarity of method. The jury was clearly instructed that it was to consider Alston's innocence or guilt solely on the alleged sale of November 20. Those instructions are adequate to confine the relevance of the evidence to which Alston objects.

4. There was also testimony regarding the first meeting between Johnson and Alston, which took place on August 20, 1970, but that testimony is clearly relevant to any alleged future transactions between Alston and Johnson.

substance he sold to Johnson was in fact heroin. See United States v. Wilson, *supra*; United States v. Clifton, *supra*. We conclude that the testimony referring to October 25, November 4, and November 5, related to an alleged transaction that was sufficiently similar in operation to be relevant to the transactions of November 20 and November 24. Evidence concerning telephone conversations of November 11 and November 18 was also introduced. Both conversations merely laid the foundations for the future transactions of November 20–24, the offense under indictment here. A conversation on November 30 was also taped and played to the jury. That tape contains considerable reference to the transaction of November 20–24, including a number of allusions to the pick-up house and to the third party who eventually delivered the heroin to Johnson on November 24. In sum, we, like the trial judge, are satisfied that the evidence relating to the events that transpired between October 25 and November 30, 1970, is relevant to the alleged heroin sale under indictment here and that the testimony is not cumulative. Because that testimony tends to establish a certain methodology of operation and because it also tends to establish Alston's knowledge of the substance that he sold to Johnson, we conclude that it was not erroneously admitted.

■ Alston's third allegation of error is that the Government failed to establish adequately a chain of custody for the three tape recordings introduced into evidence. We conclude, however, that adequate predicate for the tapes was established before the trial judge. Agent Johnson testified that he replayed each tape after he recorded it, and then initialed it. He turned the tapes over to his supervisor, who also testified at the trial and who also initialed the tapes. The tapes were placed in a sealed envelope by the BNDD and submitted to its Custodian of Evidence in New Orleans, where they were maintained in a vault until the time of the trial. The tapes were played to defense counsel and to the trial judge prior to trial. Agent Johnson identified the tapes without hesitation as genuine and accurately representing his recollection of his conversations with Alston. Alston's counsel himself stated toward the close of the trial that he "did not suggest to the jury that they [the tapes] were altered." Under these circumstances and noting that BNDD procedures for the safekeeping of the tapes, we conclude that an adequate predicate was laid for the introduction of the evidence. *See* Todisco v. United States, 5 Cir. 1961, 298 F.2d 208, cert. denied, 368 U.S. 989, 82 S.Ct. 602, 7 L.Ed.2d 527.

■ Alston's last allegation is that he was denied his Fifth Amendment right against self-incrimination when the Government introduced evidence regarding an alleged narcotics transaction of November 4/5, which is the subject of a separate indictment pending in the Eastern District of New York. Giving Alston the benefit of every doubt, we presume that he would contend that he might wish to take the stand in his own behalf in the New Orleans trial in issue here, while at the same time he might not wish to take the stand later in the New York trial. By introducing evidence regarding the alleged offenses included in the New York indictment at the trial below, Alston continues, the Government might effectively stifle his willingness to take the stand in New Orleans because of his unwillingness to take the stand in New York. Even attenuated as Alston's argument is, the trial judge again demonstrated admirable administration of the trial. The district judge offered to forbid the Government's use of Alston's testimony regarding the alleged New York offense if he wished to take the stand on that bit of evidence in the New Orleans trial. Alston refused that offer at the trial, and argues on appeal that only a grant of immunity against prosecution for the alleged New York offense would cure the infringement of his Fifth Amendment rights that he asserts here. We have already concluded that evidence regarding

the New York sale and the events of November 4 and 5 was relevant and admissible. We conclude now that the district judge was correct in his offer regarding the New York indictment and that Alston's Fifth Amendment rights were adequately protected. The judgment below is affirmed.

Affirmed.