**James McGRATH, Petitioner-Appellant,**

v.

**Douglas VINZANT et al., Respondents.**

No. 75–1282.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1975.

Decided Jan. 16, 1976.

Certiorari Dismissed June 1, 1976.

See 96 S.Ct. 2221.

David M. Skeels, Brookline, Mass., for petitioner-appellant.

Dennis J. LaCroix, Asst. Atty. Gen., Crim. Div., with whom Francis X. Bellot-

ti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Bureau, were on brief, for respondents.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant was tried and convicted in the Massachusetts Superior Court of rape, kidnapping and assault with a dangerous weapon, and his conviction was affirmed by the Supreme Judicial Court. *Commonwealth v. McGrath*, 1973 Mass. A.S. 1387, 303 N.E.2d 108 (1973). He then brought this petition for habeas corpus, from the denial of which he now appeals. The single question presented is whether his rights under the sixth and fourteenth amendments to the Constitution were violated when, during the state trial, the judge refused to order the rape victim, then on the witness stand, to reveal her current home address, to which she had moved shortly after she had been attacked.

The victim, a Miss Linda Perry, was called by the state. Apart from her address since the incident[1] (which occurred four months before the trial) her identity and associations were rather fully revealed. She testified that she had grown up in South Boston, had one sibling, a 13 year old brother, and was 22 years old; that at the time of the incident she had been living alone in a one bedroom apartment in a highrise building at 75 St. Alphonsus Street, Boston, near the Mission Hill Church; and that she had then been employed by Business Equipment Corporation, 100 Shawmut Avenue, Boston, a firm for which she had worked as a secretary to three salesmen for a year and a half. She was presently working as a private secretary at 294 Washington Street, Boston, with an insurance and real estate firm known as Driscoll Pearce.

Concerning the incident, Miss Perry testified that she had gone from her place of employment at 5 p. m. to the nearby parking garage where she had left the car which she drove to work. It was after dark, and there was no illumination inside. As she was approaching the car she was suddenly confronted by the petitioner, a stranger, who emerged from the dark holding a pistol. He forced her into her car with him, and raped her. After raping her, he would not let her leave the car, saying he was afraid that she would tell the police. Miss Perry testified that she kept talking, hoping that she would not be harmed or killed. Several hours later police officers (who also testified at the trial) noticed the occupied parked car in the then-deserted garage, and arrested defendant after observing the pistol on the car floor. The pistol, a fully operable .38, was loaded with six cartridges. A search of petitioner's person revealed 14 other .38 cartridges.

Petitioner, although he did not take the stand or present other evidence, was vigorously and competently represented by his present counsel. Hearings outside the jury were held on the question of fresh complaint and on search and seizure; numerous exceptions were taken to rulings of the court. The cross-examination of Miss Perry and of the medical and police witnesses was searching. The trial lasted for several days.

The defense's unsuccessful effort to elicit Miss Perry's current address arose at the beginning of its cross-examination:

"Q. At the time this incident happened, you were living at 75 Alphonsus?

A. St. Alphonsus Street.

Q. Where are you living now?

MR. ZALKIND: I pray your Honor's judgment.

---

1. The pattern of non-disclosure of her current address was set by the prosecutor who, just after asking her name at the outset of direct examination, said, "Now, Linda, don't tell us what address you live at, but would you tell us what city you presently reside in?" Miss Perry replied "Boston."

THE COURT: Excluded.

MR. SKEELS: Note my exception.

THE COURT: You don't want an address to summons the girl, do you?

MR. SKEELS: I think this would be important.

THE COURT: Do you want the address to summons the girl?

MR. SKEELS: No, because she is on the stand.

THE COURT: All right, I will exclude it.

MR. SKEELS: Note my exception.

THE COURT: Yes."

There were no further efforts to elicit her current address,[2] and it remains unknown. What light, if any, the address would have shed on any of the proceedings, or on Miss Perry's character and credibility, likewise remains unknown.

Petitioner rests his claim of constitutional error on *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). In *Smith v. Illinois*, a government undercover agent, as here the principal witness against the defendant, was permitted to testify without giving either his actual name or his address. In reversing, the Court said, 390 U.S. at 131, 88 S.Ct. at 750,

"[W]hen the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' [see *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)] through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself."

The *Smith* Court quoted from *Alford v. United States, supra,* a case in which a government witness' residence (apparently a prison) had been withheld over objection, as follows:

" . . . The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed. . ."

390 U.S. at 132, 88 S.Ct. at 750.

In the present case, the Massachusetts Supreme Judicial Court cited *Smith* and *Alford* as standing for the "general rule that, without any obligation to explain the purpose of his inquiry, a defendant has a constitutional right . . . to ask a prosecution witness to disclose his present place of residence." *Commonwealth v. McGrath*, 303 N.E.2d at 113. It felt, however, that the present case was within a well-recognized exception, arising when "consideration of the safety of the witness might justify nondisclosure of his present address." *Id.; Smith v. Illinois*, 390 U.S. at 133–34, 88 S.Ct. 748 (White & Marshall, JJ., concurring). *See, e. g., United States v. Alston*, 460 F.2d 48 (5th Cir.), *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972); *United States v. Saletko*, 452 F.2d 193 (7th Cir.), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1971). Though frankly troubled by the failure of the prosecution to have shown "an actual threat to the witness,"[3] 303

---

**2.** The court had earlier denied a pretrial motion to discover names and addresses of government witnesses.

**3.** The Massachusetts court made clear that it was unhappy with the trial judge's laconic handling of the problem. It instructed that if a prosecutor objects to disclosure on cross-examination of information concerning a witness, he should volunteer an explanation at the bench, on the record, and the court should determine whether a hearing in the absence of the jury would be appropriate. The court suggested that in some cases a proper balance between the right of confrontation and the witness' safety might be struck by private disclosure of the address to defense counsel. *Commonwealth v. McGrath*, 303 N.E.2d at 114 n. 5.

N.E.2d at 114, the Court believed that the coalescence of a number of factors prevented an abridgement of petitioner's constitutional right of confrontation from having occurred. These were: (1) the nature of the crime charged, demonstrating a threat "inherent in the situation," *see United States v. Daddano*, 432 F.2d 1119, 1128 (7th Cir. 1970), *petition for cert. dismissed*, 401 U.S. 967, 91 S.Ct. 990, 28 L.Ed.2d 250, *cert. denied*, 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971); (2) the disclosure of the victim's home address at the time of the offense four months before trial, coupled with the lack of any restriction on cross-examination beyond nondisclosure of the victim's current address; and (3) the fact that although "the colloquy between defence counsel and the judge gave the defendant an opportunity to explain the need for an answer . . . defendant did not take advantage of that opportunity." Such an explanation, the Court said, would have enabled the judge to weigh the defendant's requirements against the danger to the witness. 303 N.E.2d at 114.

■ We agree with the decision of the Supreme Judicial Court. It gave appropriate recognition to the general constitutional rule that without any obligation to explain the purpose of his inquiry, a defendant has a right to require disclosure of a witness' current address. But the "rule" is not, like a rule of plane geometry, absolute. The Supreme Court recognized in *Alford*, 282 U.S. at 694, 51 S.Ct. 218, the discretionary power of the trial judge to exclude questions which tend merely to "harass, annoy or humiliate," and Justice White, in his concurring opinion in *Smith v. Illinois*, 390 U.S. at 133–34, 88 S.Ct. at 750, 751, said that he would "place in the same category those inquiries which tend to endanger the safety of the witness." In *United States v. Alston*, 460 F.2d at 51, Judge Goldberg wrote,

"It is true, as Alston urges, that both *Alford* and *Smith* reversed criminal convictions because the home address of a witness was not divulged. But it appears to us that the purpose of *Alford/Smith* was to safeguard the opportunity for a meaningful and open cross-examination, not to require that a witness always divulge his or her home address."

In *Alston* the court found that as the non-disclosing witness had provided extensive background information, his actual home address was not needed to "place the witness in his proper setting"; given the implicit threat to the witness' safety and that of his family, solicitation of the address was, in effect, an attempt to "harass, annoy or humiliate." *Id.* at 52. While factually different in some respects, *Alston* contained many of the same elements as here: a fair inference of danger to the witness; full disclosure of the witness' background apart from his current address; and failure by the defense to pinpoint any special or likely relevance of the address.

■ Like the Massachusetts Supreme Judicial Court and our dissenting brother, we are unhappy that an explicit claim of danger was not made here by the witness or prosecutor, and that the trial judge did not find expressly that disclosure of the address would create an unwarranted threat. As Justice White said, "if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering . . . ." *Smith v. Illinois*, 390 U.S. at 134, 88 S.Ct. at 751. However, while express procedures are obviously desirable, if the reasons are implicit because of the nature of the crime and the posture of the witness, they need not be ignored. *See, e. g., United States v. Daddano, supra*.

Here the circumstances both imply a claim of danger and supply a factual basis for that claim, and we believe them to be sufficient substitutes for a more explicit showing. We see no reason whatever to suppose that the judge withheld the address for any reason oth-

er than to protect and reassure the witness. No other purpose can be divined from the record and it would be commonly understood that one in Miss Perry's shoes might want and deserve this sort of protection.[4] Indeed, the prosecutor's unexplained and unchallenged admonition to Miss Perry, at the beginning, not to divulge her address, suggests that this consideration was in everyone's mind, and that to explain would be to belabor the obvious. Miss Perry, a single woman living alone in Boston, had not only been raped but had been kidnapped and threatened with a loaded pistol. She was now confronting her alleged attacker and her testimony could result in his imprisonment for life. Petitioner argues that Miss Perry had nothing to fear since petitioner was in custody and had no accomplices; furthermore, if reprisals were feared, the district attorney "would never have brought out the address of her present employer." But Miss Perry had no assurance that petitioner would not be acquitted and set free, nor that he had no friends. She knew that she was the principal witness against him. One would not need to be hypersensitive to be fearful in this situation at the prospect of merely confronting much less sharing one's home address with an attacker.[5] Nor do we find it so obvious that giving out her employment address would render her as vulnerable.

It is, moreover, important to consider, when assessing an exception to defendant's constitutional claim to the address, whether in all other respects the defense was given an "opportunity to place the witness in his proper setting." *Alford v. United States*, 282 U.S. at 692, 51 S.Ct. at 219. In cases like *Smith v. Illinois*,

*supra*, the witness remained for all intents incognito. Without name or address or background, he was a mere shadow. Such was not true of Miss Perry. Her associations and background were disclosed, and if what was sought were neighbors and co-workers to interview, they were, it would seem, available through the residential and business addresses that were given. The incremental value of her most recent address is hard to assess, but it would not, in the circumstances, seem great.

To be sure, if there had not been this sufficient justification for concealing the witness' address, petitioner would have had the unqualified right to that information, with no obligation to provide reasons for it. *See United States v. Honneus*, 508 F.2d 566, 572 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). But here, as we have indicated, the record demonstrates both a proper reason to withhold the address and an open and meaningful opportunity to cross-examine in other respects. Under these circumstances, petitioner could no longer rely merely on that general right. This is not to say that he would then be completely foreclosed from obtaining the witness' address, but it became incumbent on him to show a particular need for it which the judge could weigh against the risk to Miss Perry from disclosure. No such particular need was shown.

Petitioner contends, however, that he should be excused from not having stated any particularized reasons as he was never allowed to do so by the superior court judge. It may well be that the judge's colloquy with defense counsel was something less than an open-ended invitation to give reasons at that time,

4. The case is, of course, totally different from one like *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), where it appeared that by withholding the witness' address the Government was attempting to conceal from the jury the highly relevant fact that the witness was in prison.

5. The anxieties of rape victims as key prosecuting witnesses, and the alleged insensitivity with which they are sometimes treated, have

recently been the subject of comment. Blumberg and Bohmer, *The Rape Victim and Due Process*, 80 Case & Comment, Nov.–Dec. 1975, 3, 7. *See* Crim. Justice Newsletter, Nov. 10, 1975, at 10. The Law Enforcement Assistance Administration is reported to have prepared guidelines for state and local law enforcement agencies. 6 Behavior Today 635 (Dec. 8, 1975).

though we cannot say that the court afforded no opening. Be that as it may, defense counsel could certainly, without offense, have requested a bench conference or filed a motion, and, given his skill and tenacity, would undoubtedly have done so had he been aware of a particular need to place before the court. That no such particular need has been identified to date reinforces the impression that none existed.

We conclude that petitioner's constitutional rights were not violated, and affirm the denial of the petition.

*Affirmed.*

ALDRICH, Senior Circuit Judge (dissenting).

I regret that I am unable to concur, in part because of what the court says, and in part because of what it overlooks. In justifying its failure to follow the Supreme Court decisions, the court has conjured up a new type of threat to the witness, and approved a shift, without prior notice, of the burden to the defendant.

I can think of no basis for accepting Justice White's danger-to-the-witness exception as law, particularly having in mind that it was not adopted by the Court, without giving full weight to the heavy burden he placed on the prosecution.

"[T]he State or the witness should *at the very least* come forward with some showing of why the witness *must be excused* from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling." *Smith v. Illinois,* 1968, 390 U.S. 129, 134, 88 S.Ct. 748, 751, 19 L.Ed.2d 956. (Emphasis suppl.)

But even if the burden were less, the record supports no finding against the defendant whatever. A straw man has bested the Supreme Court's rule.

On the record before it, the trial court knew, (1) that defendant had a gun (but not whether he had threatened the complaining witness—this was the question at issue); (2) that the crime, if any, had been a solitary one, with no confederates, and (3) that the defendant was in custody. In this circumstance the Massachusetts Supreme Judicial Court, 303 N.E.2d at 114, post, and this court, do not find the address irrelevant, but decide three things: that a threat was "inherent in the situation," and that defendant had the burden, and counsel for defendant the opportunity, to give reasons for asking the question to "weigh against" the danger to the witness. *See Commonwealth v. McGrath,* 1973, Mass. A.S. 1387, 1397, 303 N.E.2d 108, 114. I must disagree with respect to all three.

Quite apart from the burden of proof, on this record there was no affirmative evidence of a threat to the witness in the sense that the cases recognize, but, rather, the contrary. It does not advance the argument to call the threat "inherent." Inherent in what? Defendant was in custody. Even were he not, if a threat is "inherent" simply because violence may have been involved in the commission of the asserted crime, we have established a very broad class of defendants who will be limited in their constitutionally basic right of cross-examination. Furthermore, this reasoning is not a "must," to quote Justice White, but pure bootstrap, fundamentally violating the presumption of innocence. If, merely because violence was allegedly involved, the exception and not the Supreme Court's rule is to govern, it can only be by assuming defendant's guilt, the very question to which the cross-examination was directed. I cannot believe this was what Justice White intended.

The court's citation of *United States v. Alston,* 5 Cir., 1972, 460 F.2d 48, is interesting for its differences. *Alston* was a drug case, where the government sought to avoid disclosing the address of the informer. Even if the particular defendant was innocent, the day-to-day personal dangers that a drug informer runs are obvious. This is a typical situation where weighable danger might be found

to be inherent. It is at the opposite pole from the case at bar. Nor am I persuaded by the court's citation of *United States v. Daddano*, which involved actual attempts to silence witnesses. 432 F.2d at 1122–23, 1127, 1128.

In this circumstance, apparently recognizing that there was no immediate threat, the court holds that a threat to the witness exists in the possibility that the defendant may be acquitted and seek retribution. No case is cited recognizing this type of threat. I cannot think that the fact that the jury may find the defendant innocent should be ground for the court to presume him guilty.

Even affirmative proof of a danger of reprisals is not normally an excuse for not testifying. *Piemonte v. United States*, 1961, 367 U.S. 556, 559, 81 S.Ct. 1720, 6 L.Ed.2d 1028, n. 2. If, simply by inference, a trial court can avoid the Supreme Court's rule, the rule is a dead letter.[1]

This leads me to say that it is purely speculative to assume that the trial court's reason for denying the witness's address to a defendant in custody was threat of danger at all. The court gave no reason. It may be that it felt, particularly when the witness had moved into a new neighborhood, that revealing her address, perhaps for the newspapers, would be an embarrassment. Embarrassment is not even a weighable excuse.[2] *United States v. Doe*, 1 Cir., 1973, 478 F.2d 194, 195. The sole question is relevancy. *Cf. Alford v. United States*, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624.

Relevancy, as the Supreme Judicial Court recognized, seems clear. The court's saying that there is but a doubtful coloration difference between the witness's (unknown) present address and her previous residence, and that, in spite of the brief period available during a short trial, it is unassessable whether her present address would have aided investigation—and that nothing had been shown—is inconsistent with the doctrine that when there has been a constitutional deprivation the burden is not on the defendant to show the consequences. The burden is on the state to show beyond a reasonable doubt that there was none. *Chapman v. California*, 1967, 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705. I cannot think the state entitled to a ruling as matter of law. Indeed, I am offended by the state's refusal to give any addresses prior to trial and then arguing that to give the present residence during trial was neither "needed nor helpful."[3] Yet, in effect, in the absence of a justifiable excuse, the court is doing little different.

Finally, I cannot read the colloquy, quoted in full in the opinion, as offering defendant even the "opportunity" to state his case. Parenthetically, then Superior Court Rule 71 provided,

> "Objections to evidence shall be decided without argument unless the presiding justice calls upon the parties to state the grounds upon which the evidence is offered or objected to."

---

1. I may add, with due respect to my brethren, that I am quite unpersuaded that a man bent on reprisals would be deterred by not being given the present residence when he knows the witness's name, her recent residence, and the name and address of her employer. All that concealing the present residence would accomplish would be to impede counsel in the brief time he had to investigate. And, of course, conceal whatever color attached to the new address.

2. It seems hardly appropriate to compare embarrassment to the witness with the injury to the defendant if he is wrongly convicted for lack of proper cross-examination. I say this without in any way denigrating the great dis-comfort of a complaining witness, on the assumption, of course, that she is telling the truth.

3. While this factor is not of itself determinative, I note that defendant was denied the witness's address in peculiarly prejudicial circumstances. As shown in the court's opinion, by the prosecution's questioning it was made to appear that the address should be withheld from the defendant. When the court sustained the prosecutor's objection to defendant's inquiry, any unfavorable implication received judicial approval. I suggest defendant was not only deprived of his rights; he may have been blackened by the very act of deprivation.

I read this to mean that both parties, unless asked to comment, should keep silent, except for an offer of proof, if required. On cross-examination none was. *See Commonwealth v. Rudnick,* 1945, 318 Mass. 45, 56, 60 N.E.2d 353. But quite aside from this rule, which I believe to be normal practice, rule or no rule, I repeat the quotation which my brethren take from *Alford* (and *Smith*) but apparently do not take to heart—the question "Where do you live?" is appropriate "without any . . . declaration of purpose." If a court is going to reverse a universal rule as to who is to go forward when a prima facie proper question has been asked, at a minimum counsel should be affirmatively notified. It should not be enough to praise counsel afterwards for being vigorous and competent.

I cannot believe this defendant received due process. I further fear that the reasons given for holding otherwise will lead to much mischief, (a) in further disregard of the Supreme Court's rulings respecting basic cross-examination, and (b) in connection therewith causing trial counsel, who have troubles enough, to live with a principle that tells them not to volunteer or argue, while having to look over their shoulder at a possible appellate court that will tell them they should not have adhered to it. This last is a heavy, and unwarranted, burden to place on counsel who finds his client receiving a 10 to 15 year sentence, perhaps because he guessed wrong. I dissent.