USCA1 Opinion

 

 December 23, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1731 KENT A. SIEGFRIEDT, Petitioner, Appellant, v. MICHAEL FAIR, Respondent, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ _________________________ Brownlow M. Speer, with whom Committee for Public Counsel __________________ _____________________________ Services was on brief, for appellant. ________ Pamela L. Hunt, Assistant Attorney General, with whom Scott ______________ _____ Harshbarger, Attorney General, was on brief, for appellee. ___________ _________________________ _________________________ SELYA, Circuit Judge. Petitioner-appellant Kent A. SELYA, Circuit Judge. ______________ Siegfriedt seeks appellate review of an order of the United States District Court for the District of Massachusetts dismissing his application for habeas relief. See 28 U.S.C. ___ 2241-2254 (1988). The issue presented on appeal is nominal in the classic sense. We must determine whether the admission at trial of an unavailable witness's tape-recorded testimony, originally adduced at a probable cause hearing, violated the defendant's constitutional rights because the witness testified under a pseudonym. Finding no constitutional shortfall, we affirm. I. I. __ Background Background __________ Because the Massachusetts Supreme Judicial Court (SJC) has painstakingly traced the lay of the land, see Commonwealth v. ___ ____________ Siegfriedt, 402 Mass. 424, 522 N.E.2d 970 (1988), it would be __________ pleonastic to recount the facts in great detail. We provide instead only the bare minimum necessary to place the petitioner's appeal into workable perspective. Siegfriedt was charged with arson. At the probable cause hearing, an individual known as Christopher Martel maintained under oath that Siegfriedt forewarned him of the fire and accurately predicted its approximate time of outbreak. After Martel withstood cross-examination at the hands of petitioner's counsel, the court found probable guilt. By the time petitioner's case was reached for trial, 2 Martel's whereabouts were a mystery. A diligent search failed to locate him but revealed a previously unknown fact: although the witness had gone by the name of Christopher Martel, his true name was Albert Ciccarelli, Jr. The presiding judge nevertheless admitted Martel/Ciccarelli's tape-recorded testimony, originally delivered at the probable cause hearing, into evidence at petitioner's trial.1 Thereafter, the judge allowed petitioner to impeach the declarant's credibility. To that end, petitioner called two witnesses, including Martel/Ciccarelli's brother, who testified anent the declarant's parlous reputation for veracity. The jury found Siegfriedt guilty. The SJC affirmed the conviction. Siegfriedt then sought habeas redress. The federal district court spurned his application but issued a certificate of probable cause under 28 U.S.C. 2253. This appeal ensued. II. II. ___ Standard of Review Standard of Review __________________ Petitioner contends here, as he contended unsuccessfully below, that his constitutional rights were abridged when the state court admitted Martel/Ciccarelli's prior recorded testimony into evidence. This contention evokes a mixed question of law and fact. Under the presently prevailing standard, "mixed" constitutional questions are subject to plenary review in federal habeas proceedings. See Chakouian v. Moran, ___ _________ _____ 975 F.2d 931, 934 (1st Cir. 1992); see also Miranda v. Cooper, ___ ____ _______ ______ ____________________ 1Siegfriedt's first trial resulted in a hung jury. We refer here, and below, only to the second trial, at which petitioner was found guilty. 3 967 F.2d 392, 401 (10th Cir.) (affording de novo review to __ ____ district court's decision concerning adequacy of cross- examination in state criminal case), cert. denied, 113 S. Ct. 347 _____ ______ (1992). Hence, we scrutinize the denial of petitioner's application for habeas corpus without special deference either to the district court or to the state courts on the central issue raised by this appeal. Withal, we remain "bound by the [state] court's interpretation of [its] evidentiary law" so long as the record shows "a sufficient factual predicate rationally to support" that court's categorization of the contested evidentiary proffer. Puleio v. Vose, 830 F.2d 1197, 1204, 1207 (1st Cir. ______ ____ 1987) (citations and internal quotation marks omitted), cert. _____ denied, 485 U.S. 990 (1988). ______ III. III. ____ Analysis Analysis ________ A A _ The Confrontation Clause ensures a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This guarantee applies to the States through the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. ___ _______ _____ 400, 403 (1965). While the guarantee restricts the circumstances under which a court may admit the statements of unavailable declarants into evidence, the restriction is not an absolute bar since the keen "societal interest in accurate factfinding" necessarily tempers the sweep of the Confrontation Clause. Bourjaily v. United States, 483 U.S. 171, 182 (1987). Thus, _________ ______________ 4 hearsay evidence from an unavailable declarant may survive exclusion if the proponent can demonstrate that the proffered evidence "bears adequate indicia of reliability." Ohio v. ____ Roberts, 448 U.S. 56, 66 (1980) (internal quotation marks _______ omitted). Such indicia can be established either by showing that the evidence "falls within a firmly rooted hearsay exception" or by showing that the evidence possesses "particularized guarantees of trustworthiness." Id.; accord Idaho v. Wright, 110 S. Ct. ___ ______ _____ ______ 3139, 3147 (1990) (collecting cases). Former testimony in the same case generally comes within a recognized hearsay exception if the declarant is unavailable and the party resisting the proffer has had a "complete and adequate opportunity to cross-examine." California __________ v. Green, 399 U.S. 149, 165-66 (1970) (quoting Pointer, 380 U.S. _____ _______ at 407); see also Mancusi v. Stubbs, 408 U.S. 204, 216 (1972); ___ ____ _______ ______ United States v. Zannino, 895 F.2d 1, 5-6 (1st Cir.), cert. ______________ _______ _____ denied, 494 U.S. 1082 (1990); cf. Fed. R. Evid. 804(b)(1). Here, ______ ___ the parties agree that the tape recording was generated in the same case and comprised the prior testimony of a declarant who was genuinely unavailable at the time of trial.2 They disagree, however, about the adequacy of the opportunity for cross- ____________________ 2The Court recently cast doubt upon the admissibility of prior testimony in criminal cases absent a concrete showing of the declarant's unavailability. See White v. Illinois, 112 S. ___ _____ ________ Ct. 736, 743 (1992) (suggesting, in dictum, that a showing of declarant's unavailability might be necessary to trigger the prior testimony exception to the hearsay rule because of the constitutional "preference for live testimony"). Given the witness's acknowledged unavailability in this case, we need not ponder the import of the White dictum. _____ 5 examination. The petitioner claims that, because Martel/Ciccarelli testified under an adopted name at the probable cause hearing, the opportunity for cross-examination was inadequate as a matter of law. This claim derives from the Supreme Court's opinion in Smith v. Illinois, 390 U.S. 129 (1968). There, an informant in a _____ ________ drug-trafficking case testified at trial under an assumed name. When defense counsel attempted to ascertain the witness's true name and address, the trial judge sustained the prosecutor's objections. The Supreme Court vacated the ensuing conviction. In the Court's view, the trial judge's ruling impermissibly interfered with the defendant's right to confrontation because it foreclosed "the opportunity to place the witness in his proper setting and put . . . his credibility to a test." Id. at 132 ___ (citation and quotation marks omitted). Petitioner interprets Smith as spawning a bright-line _____ rule a rule which mandates that, whatever nuances may be supplied by the surrounding circumstances, testimony given under an apocryphal name can never be admitted over objection in a criminal trial. But, this interpretation effectively ignores the Court's instruction that society's interest in accurate factfinding is to be regarded as an important factor in Confrontation Clause inquiries. See Bourjaily, 483 U.S. at 182. ___ _________ Accordingly, we decline to read Smith in the wooden fashion _____ petitioner suggests. Even before Bourjaily we held that Smith's guiding _________ _____ 6 principle, insofar as it concerns a witness's current address, "is not, like a rule of plane geometry, absolute." McGrath v. _______ Vinzant, 528 F.2d 681, 684 (1st Cir.), cert. dismissed, 426 U.S. _______ _____ _________ 902 (1976). In our estimation, the Smith principle, insofar as _____ it concerns a witness's true name, is likewise not absolute. Accord United States v. Rangel, 534 F.2d 147, 148 (9th Cir.), ______ _____________ ______ cert. denied, 429 U.S. 854 (1976) (Smith "does not establish a _____ ______ _____ rigid rule of disclosure [of a witness's name], but rather discusses disclosure against a background of factors") (citations and internal quotation marks omitted). The long and short of it is that the Smith standard has _____ a core purpose: to prevent a criminal conviction based on the testimony of a witness who remains "a mere shadow" in the defendant's mind. McGrath, 528 F.2d at 685. When that core _______ purpose is not implicated, we see no reason for reflexively excluding otherwise admissible testimony. Certainly, Smith _____ itself gives no indication that its guiding principle extends beyond the confines of its articulated rationale into such far- flung galaxies. See Smith, 390 U.S. at 132 (explaining that the ___ _____ defendant must be accorded a fair opportunity to place an adverse witness in the witness's proper setting and to put his testimony and credibility to a meaningful test). Against this backdrop, it is readily apparent that all pseudonyms are not equal in the eyes of the Confrontation Clause. Rather, courts must gauge the pull of Smith in any given case by _____ the degree to which its rationale applies. Sometimes, as in 7 Smith itself, a witness's use of a fictitious name will transform _____ him into a wraith and thereby thwart the efficacy of cross- examination. Other times, the use of a fictitious name will be no more than a mere curiosity, possessing no constitutional significance.3 B B _ The case at hand is at a substantial remove from Smith. _____ In Smith, unlike here, the witness adopted a pseudonym for the _____ sole purpose of testifying. In Smith, unlike here, the defendant _____ did not know the witness's true identity before the jury returned its verdict. In Smith, unlike here, the witness's anonymity was _____ the direct result of government contrivance. We find these distinctions more than sufficient to propel this case out of Smith's precedential orbit. _____ 1. In this situation, the name under which the 1. witness testified (Christopher Martel) was not some passing cognominal fancy assumed solely for the purpose of the judicial proceeding and bearing no relation to the witness's life outside the courthouse. To the contrary, this was a name the witness had clasped to his bosom and made his own. He held himself out to ____________________ 3Petitioner's insistence upon a bright-line rule, slavishly followed, could produce a bizarre anomaly. One can easily envision circumstances in which a witness testifying under his birth name might present a much more spectral figure than if he or she testified under an adopted name. For example, the appellations Issur Danielovitch Demsky, Betty Joan Perske, and Marion Michael Morrison will probably be of less assistance in placing the affected individuals in their proper settings than their screen names (Kirk Douglas, Lauren Bacall, and John Wayne, respectively). 8 the world as Christopher Martel; he was identifiable in Siegfriedt's community by that name; and he was known by that name at his own address an address which he accurately recounted in the course of his testimony. Thus, Martel/Ciccarelli was not some incorporeal apparition as was his ostensible counterpart in Smith but a flesh-and-blood human _____ being easily placed within his relevant context. 2. At the probable cause hearing, petitioner was able 2. effectively to question the declarant qua Martel. Moreover, because petitioner discovered the witness's true name prior to trial, he was able effectively to investigate and impeach the declarant qua Ciccarelli. He took full advantage of both these opportunities, in the first instance through lengthy cross- examination and in the latter instance by calling witnesses to debunk the declarant's reputation for truthfulness. The goals of Smith's guiding principle placing the witness in his proper _____ setting and putting his credibility to a fair test were satisfied. See generally United States v. McLaughlin, 957 F.2d ___ _________ _____________ __________ 12, 17 (1st Cir. 1992) (explaining that the main purposes of cross-examination are to impeach credibility and to expose a witness's biases and possible motives for testifying) (collecting cases); see also Clark v. Ricketts, 958 F.2d 851, 855 (9th Cir. ___ ____ _____ ________ 1991) (discerning no Confrontation Clause violation despite informant's refusal to reveal his name while testifying; defendant knew the witness's name before trial and, therefore, had an opportunity to conduct both an out-of-court investigation 9 and an in-court examination), cert. denied, 101 S. Ct. 796 _____ ______ (1992). 3. In Smith, the defense failed to learn the witness's 3. _____ true name and address because government actors the prosecutor and the judge combined to block its access to the witness, thereby restricting the scope of cross-examination. Here, however, there is no suggestion that the State knew of Martel/Ciccarelli's hidden identity at the time of the preliminary hearing or that the presiding judge sustained objections or otherwise imposed any Smith-related scope _____ restriction on cross-examination. That the cross-examination conducted by petitioner's attorney failed to reveal Martel/Ciccarelli's birth name was not in any way attributable to official conduct. We believe that this distinction is significant because "the Confrontation Clause guarantees an opportunity for effective ___________ cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). This ________ _________ precept applies even when the witness himself is unequivocally to blame for the relative ineffectiveness of the cross-examination. See id. at 19 (discussing a situation where a witness's memory ___ ___ lapse prevented him from answering potentially discrediting questions). We do not think this precept diminishes in vitality simply because the defense's opportunity to cross-examine the declarant arises at a preliminary hearing. See, e.g., Roberts, ___ ____ _______ 10 448 U.S. at 73 n.12 (indicating that, under such circumstances, "no inquiry into 'effectiveness' is [ordinarily] required").4 Because petitioner questions the effectiveness of the cross- examination rather than an undue, State-imposed limitation on its scope, he is hard pressed to contend that Smith requires a _____ reversal here. 4. When this case is judged by the totality-of-the- 4. circumstances test that proper application of the Smith principle _____ requires, it readily passes constitutional muster.5 We hold, therefore, that Martel/Ciccarelli's use of an alias at the probable cause hearing did not, without more, render that testimony inadmissible at a later proceeding in the same case. C C Once the Smith hurdle is cleared, this case _____ unquestionably meets the Roberts criteria. Apart from _______ Martel/Ciccarelli's unique brand of name-dropping, there is no basis for any suggestion that the defense's opportunity for cross-examination was incomplete or inadequate. The witness testified under oath, before a judge, and in the same case. A ____________________ 4The Roberts Court indicated that an exception might lie for _______ extraordinary cases in which defense counsel provided ineffective assistance at the earlier hearing. See Roberts, 448 U.S. at 73 ___ _______ n.12, In the case at hand, however, appellant has advanced no such claim. 5Although we deem the three main points of divergence between this case and Smith, see text supra, to be important, we _____ ___ _____ emphasize that Smith must be applied in a case-specific fashion, _____ having in mind the entire array of circumstances that attend the testimonial proffer in any given situation. We do not, therefore, assign decretory significance to any single distinguishing factor. 11 verbatim record of the proceedings was contemporaneously made. The defendant was represented by counsel. His attorney was permitted to cross-examine without undue restriction. Under these circumstances, we find that the state court appropriately classified the tape recording within the hearsay exception for prior testimony of an unavailable declarant. See Green, 399 U.S. ___ _____ at 165-66. IV. IV. ___ Conclusion Conclusion __________ We need go no further. With Juliet we ask "What's in a name?" and with her we conclude "[t]hat which we call a rose by any other name would smell as sweet." W. Shakespeare, Romeo and _________ Juliet, Act II, Sc. ii. Though the State's witness had one legal ______ name, he was not made a phantom to the defense merely because he testified at the preliminary hearing under a name he had assumed some time previously. The complete and adequate opportunity for cross-examination which prevailed at the first hearing, the defense's subsequent opportunity, once armed with knowledge of the witness's birth name, to put his credibility to the test at trial, and the utter absence of State action limiting the scope of the defense's cross-questioning, combine to bring the earlier testimony well within a firmly rooted hearsay exception.6 The ____________________ 6We note in passing that, even apart from whether this evidence fell within a firmly rooted hearsay exception, the Confrontation Clause would be satisfied so long as the totality of the circumstances evinced the requisite guarantees of trustworthiness. See Wright, 110 S. Ct. at 3148 (describing ___ ______ 12 Confrontation Clause was satisfied in petitioner's case. See ___ generally Maryland _________ ________ v. Craig, 110 S. Ct. 3157, 3163 (1990) (discussing the need for _____ "rigorous testing [of a witness] in the context of an adversary proceeding" in order to satisfy the imperatives of the Sixth Amendment). Affirmed. Affirmed. ________ ____________________ test; collecting cases). Although we do not decide the case on this ground, we remark the obvious: a strong argument for admissibility can be made on this basis, particularly since Martel/Ciccarelli appeared at the probable cause hearing without the protection of immunity and spoke about matters within his personal knowledge. These latter two points are important considerations in a trustworthiness inquiry. See Zannino, 895 ___ _______ F.2d at 7. 13