Melissa **KALLSTROM,**
**et al., Plaintiffs,**

v.

**CITY OF COLUMBUS, Defendant.**

No. C–2–96–124.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 27, 2001.

Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Plaintiffs.

David Marburger, Baker & Hostetler, Cleveland, OH, for Intervenor-Plaintiffs.

Patricia A. Delaney, Glenn Brooks Redick, Columbus City Attorney's Office, Columbus, OH, for Defendant.

## OPINION, ORDER, AND ISSUANCE OF LIMITED PERMANENT INJUNCTION

GEORGE C. SMITH, District Judge.

### I. INTRODUCTION

*"Our liberty depends on the freedom of the press, and that cannot be limited without being lost."*

— Thomas Jefferson, 1786

In this case, the Court is being asked to limit the freedom of the press by preventing the news media from obtaining public information contained in the city's personnel files. City police officers fear its publication may endanger themselves and their families.

To deny members of the press access to public information solely because they have the ability to disseminate it would silence the most important critics of governmental activity. This not only violates the Constitution, but eliminates the very protections the Founders envisioned a free press would provide.

Plaintiffs, who are three Columbus police officers ("Officers"), filed suit against defendant City of Columbus ("City") seeking compensatory damages under 42 U.S.C. §§ 1983 and 1988 and an injunction to prevent further dissemination of their personal information. Specifically, plaintiffs claim defendant violated their rights to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment by making their personnel records

available to a criminal defense attorney pursuant to the Ohio Public Records Act, Ohio Rev.Code § 149.43.[1] In October 1998, intervenors, a group of ten Ohio news organizations, joined the lawsuit without opposition after the City, citing the Sixth Circuit decision in this case, denied their request to see plaintiffs' personnel files.[2]

These matters are before the Court on, among other motions, intervenors' motion for summary judgment in their declaratory judgment action and defendant's motion for summary judgment on plaintiffs' § 1983 claim. For the reasons set forth herein, the Court grants intervenors' motion for summary judgment on grounds one and two of their declaratory judgment action, denies intervenors' motion for summary judgment on ground three of their declaratory judgment action, and grants defendant's motion for summary judgment as to plaintiffs' § 1983 claim.

## II. FACTS

### A. The Original Proceeding Before This Court

Plaintiffs Melissa Kallstrom, Thomas Coelho, and Gary Householder are undercover officers in the narcotics division of the Columbus Police Department. All three officers were involved in a federal investigation of the Short North Posse ("Posse"), a violent gang in the Short North area of Columbus. The under-

signed Judge presided over the criminal prosecution of forty-one members of the Short North Posse on drug conspiracy charges. *United States v. Derrick Russell, et al.,* CR–2–95–44 (S.D.Ohio) (Smith, J.). Beginning in September 1995, eight alleged Posse members were tried before a jury in this Court. All three plaintiffs served as prosecution witnesses during the trial, which resulted in seven convictions and one acquittal.

During the *Russell* trial, the City released Officer Kallstrom's personnel file to one of the defendant's lawyers, who apparently allowed at least one of the Posse defendants to read it in the courtroom. Officers Coelho and Householder suspect copies of their personnel files were obtained by the same defense attorney. Following a request in the fall of 1995, the City also released Officer Coelho's file to the Police Officers for Equal Rights.[3] The organization was investigating possible discriminatory hiring and promotion practices by the City. Plaintiffs allege the files included the Officers' addresses and phone numbers; the names, addresses, and phone numbers of immediate family members; the names and addresses of personal references; the Officers' banking institutions and account information, including account balances; their social security numbers; responses to questions regarding their personal lives asked during the

---

1. Plaintiffs' state law cause of action, arising under Ohio Rev.Code Ann. §§ 2921.24 and 102.03(B), was dismissed by this Court. As plaintiffs only appealed the dismissal of their federal law claims, they have waived any challenge to the dismissal of their state law claims.

2. Intervenors include the publishers of the following newspapers: *The Columbus Dispatch, The Cleveland Plain Dealer, The Cincinnati Post, The Cincinnati Inquirer, The Akron Beacon Journal, The Toledo Blade, The Youngstown Vindicator,* and *The Canton Re-*

*pository.* The remaining intervenors are Scripps Howard Broadcasting Company, which operates Cincinnati television station WCPO and Cleveland television station WEWS; and, the Ohio Newspaper Association, which is a trade association of publishers of daily and weekly newspapers throughout Ohio.

3. Police Officers for Equal Rights is an organization dedicated to protecting the rights of minority police officers.

course of polygraph examinations; and, copies of their drivers' licenses, which included the Officers' pictures and home addresses. Plaintiffs contend they feared for their safety and the well-being of their families knowing that Posse members might have access to this information.

Plaintiffs brought suit against the City under 42 U.S.C. §§ 1983 and 1988 seeking compensatory damages and an injunction to prevent further dissemination of their personal information. After initially entering a temporary restraining order, this Court denied plaintiffs' motion for a preliminary injunction and entered final judgment for the City. The Court based its decision on a clear and unbroken line of Sixth Circuit decisions that steadfastly refused to recognize a general constitutionally protected right to privacy that would prevent the government from releasing personal information about an individual.[4] Plaintiffs then appealed the Court's decision to the Sixth Circuit.

### B. Sixth Circuit Appeal

On February 12, 1998, a three-judge panel reversed the decision of this Court and remanded the case for further proceedings. *See Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir.1998). Establishing new law for the Sixth Circuit[5], the panel held the Officers had a constitutionally protected privacy right in the information contained in their personnel files,

"specifically their interest in preserving their lives and the lives of their family members, as well as preserving their personal security and bodily integrity." *Id.* at 1062. The court found "where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death," the government act is subject to strict scrutiny and will be upheld under the substantive due process component of the Fourteenth Amendment only where it furthers a compelling state interest and is narrowly drawn to further that interest. *Id.* at 1064. The court then balanced the interests of the Officers against those of the City. It found the City did not establish that its actions narrowly served a compelling state interest and, therefore, disclosure of the information unconstitutionally denied the Officers their fundamental rights to privacy and personal security. *Id.* at 1065.

The Sixth Circuit also held that procedural due process requires the Officers receive notice and an opportunity to be heard prior to the release of personal information "where the disclosure of the requested information could potentially threaten the officers' and their families' personal security." *Id.* at 1069.

### C. Proceedings Before This Court on Remand

Following the Sixth Circuit's ruling, intervenors requested portions of plaintiffs'

---

**4.** *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir.1996) (county sheriff's disclosure of plaintiff's arrest record to private citizen did not violate plaintiff's constitutional rights); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir.1995) (disclosure of rape victim's medical records to inmate did not violate right to privacy); *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir.1994) (disclosure of inmate's HIV positive status to corrections officer did not violate right to privacy); *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir.1981) (dissemination of juveniles' social histories to juvenile court and other government, social, and religious agencies did

not violate juveniles' constitutional rights); *see generally* John E. Nowack & Ronald D. Rotunda, *Constitutional Law* § 14.30 at 857 (5th ed. 1995) ("The Supreme Court has not yet held that the right to privacy limits governmental powers relating to the collection of data concerning private individuals.").

**5.** The *Kallstrom* decision "strikingly" changed the law of the Sixth Circuit. *Smith v. City of Dayton, Ohio*, 68 F.Supp.2d 911, 917 (S.D.Ohio 1999).

personnel records from the City pursuant to Ohio's public records laws. The City refused to provide any of the requested records, citing the Sixth Circuit opinion in this case and because, as members of the press, the intervenors have "substantial capacity ... to disseminate" identifying information in the plaintiffs' records to "wide and diverse audiences, including Short North Posse members or other dangerous persons who have the motive and capabilities to harm the officers or their families." Intervenor Compl. (Doc. 26) at ¶ 17; Defendant Answer (Doc. 28) at ¶ 2. The news organizations then intervened in this lawsuit without opposition.

Intervenors filed their motion for summary judgment on July 28, 2000. Plaintiffs made no effort to respond and did not file for an extension.[6] Thus, on September 12, 2000, this Court granted intervenors' unopposed motion for summary judgment. More than a month after intervenors' motion was granted, plaintiffs sought leave to file a response to intervenors' motion for summary judgment. Due to plaintiffs' counsel's difficult personal circumstances, this Court granted plaintiffs' motion to file a responsive memorandum. Defendant then filed for summary judgment on January 2, 2001, adopting many of intervenors' positions.

These issues are now before the Court. First, plaintiffs move to dismiss intervenors' claims as moot following recent actions by the Ohio Supreme Court and the Ohio General Assembly. Second, intervenors seek to strike portions of plaintiffs' response to intervenors' motion for summary judgment as hearsay. Third, intervenors move for summary judgment seeking declarations that (1) the Sixth Circuit decision in this case does not prohibit the City from complying with the news organizations' request; (2) the First Amendment prohibits the City from denying a public records request from a member of the press due to the press' ability to disseminate the information; and, (3) the constitutional right of privacy as articulated by the Sixth Circuit does not exist. Finally, defendant moves for summary judgment on plaintiffs' § 1983 claim.

### III. DISCUSSION

#### A. Plaintiffs' Motion to Dismiss Intervenors' Claims as Moot

■ Plaintiffs argue intervenors' claims should be dismissed as moot following recent actions by the Ohio Supreme Court and the Ohio General Assembly. A case is moot if the requested relief has been granted or no live controversy remains.

---

**6.** The Court has made every effort to accommodate plaintiffs' counsel due to his difficult personal circumstances. Yet, even before these troubles arose, plaintiffs' lack of responsiveness had tested this Court's patience. Initially, plaintiffs refused to respond to intervenors' first motion for summary judgment, which was filed on August 9, 1999. On November 1, 1999, the Magistrate Judge granted plaintiffs a two-week extension to respond. Plaintiffs still remained silent. On January 13, 2000, the Court entered an order requiring plaintiffs to show cause no later than February 2, 2000 explaining why intervenors' motion should not be granted as requested. Plaintiffs responded to the show cause order by asserting that the case was close to set-

tling, but never addressed the pending summary judgment motion. On March 3, 2000, the Court denied the intervenors' motion for summary judgment, but later vacated the decision.

This behavior has continued throughout the pendency of the case. Recently, plaintiffs filed a motion for leave to file a brief in opposition to defendant City's motion for summary judgment. According to the motion for leave, "a copy of [the motion] is attached and leave is sought to file it instanter." Plaintiffs, however, failed to attach the brief in opposition. Only after this Court made a call to plaintiffs' counsel did plaintiffs send the three-page brief.

*See Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Great W. Sugar v. Nelson,* 442 U.S. 92, 93, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979). Specifically, plaintiffs contend that the Ohio Supreme Court's decision in *State ex. rel. Keller v. Cox,* 85 Ohio St.3d 279, 707 N.E.2d 931 (1999), prevents intervenors from inspecting plaintiffs' personnel records under Ohio's Public Records Act, Ohio Rev.Code § 149.43. They also argue the General Assembly's amendment of the public records laws to limit access to peace officer records prevents the relief intervenors seek.

■ The Court finds intervenors' claims remain justiciable. First, the intervenors' federal constitutional claims are not affected by the recent changes in state law. Second, the 1999 amendment to the Ohio Public Records Act does not prevent intervenors from receiving the requested records. The legislation states on its face that it applies "only" to requests for records or releases of information "made on or after the effective date" of the amendment, which was December 1999. Intervenors made their request to the City for plaintiffs' personnel records in October 1998—more than a year before the legislation became effective. Additionally, even if the amendment did apply, it still allows press access to police officers' home addresses. Although the amendment exempts from public disclosure certain information about peace officers, it provides an agency "shall disclose to the journalist the address of the actual personal residence of the peace officer" upon written request. Ohio Rev.Code § 149.43(B)(5).

The Ohio Supreme Court's decision in *Keller* is equally inapplicable. In *Keller,* an attorney representing a criminal defendant sought a writ of mandamus to compel county officials to allow the attorney to inspect the personnel records of a county detective. The detective planned to testify in the prosecution of the attorney's client. The court found that the federal constitutional right of privacy barred access to these records "to a defendant who might use the information to achieve nefarious ends." *Keller,* 85 Ohio St.3d at 282, 707 N.E.2d at 934. Further, plaintiffs contend the "good sense rule" mentioned by the court prevents the relief intervenors seek. In *Keller,* the suggested a "good sense rule" because the information was "sought by a defendant in a criminal case." *Id.* No one suggests intervenors are criminal defendants or would use the information to achieve "nefarious ends." As neither the amendment to the Ohio Public Records Act nor *Keller* prohibit the relief intervenors seek, the Court **DENIES** plaintiffs' motion to dismiss intervenors' claims as moot.

## B. Intervenors' Motion to Strike Portions of Plaintiffs' Memorandum in Opposition

Intervenors move to strike portions of plaintiffs' memorandum in opposition to intervenors' motion for summary judgment. Specifically, intervenors claim pages five through the top half of page seven of plaintiffs' memorandum and the corresponding evidentiary materials should be stricken as hearsay. On these pages, plaintiffs quote from an FBI Bulletin, the *Calibre Press Street Survival Newsline,* a transcript from ABC News $^{20}\!/_{20}$, and a letter from the former U.S. Attorney for the Southern District of Ohio. The full news stories are attached as exhibits to the memorandum. Intervenors contend that plaintiffs are using these exhibits in an attempt to prove that the release of plaintiffs' addresses will endanger the Officers. Intervenors argue that plaintiffs use of an out-of-court declarant to prove this risk to

the Officers constitutes hearsay. Plaintiffs offer no response.

■ Federal Rule of Civil Procedure Rule 56(e) requires testimony in support of or in opposition to summary judgment to be made on personal knowledge "set[ting] forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Hearsay statements are not admissible unless covered by an exception under the Federal Rules of Evidence. Fed.R.Evid. 802. A statement is hearsay if (1) it is made by someone other than the declarant while testifying at trial or a hearing and (2) is offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). The challenged statements are classic hearsay and do not fall within any of the exceptions provided by the Federal Rules of Evidence. Therefore, the Court **GRANTS** intervenors' motion to strike.

### C. Intervenors' Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides the mechanism for deciding cases on summary judgment. It provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The *Street* court determined that complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479. Also, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of

material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir.2001).

### First Ground: Kallstrom Decision Does Not Bar Access

First, the intervenors request a declaration from the Court that the 14th Amendment does not prevent the City from allowing the news organizations to inspect or copy the requested information from plaintiffs' personnel files. In essence, the intervenors argue the Sixth Circuit's decision in this case does not prohibit the City from complying with its public records request. The Court agrees and grants summary judgment for intervenors on their first ground for declaratory judgment.

In expanding the penumbra of constitutionally protected privacy rights, the Sixth Circuit refused to provide plaintiffs with a "blanket prohibition against the future release of information contained in their personnel files." *Kallstrom,* 136 F.3d at 1067. Instead, the Sixth Circuit provided a two-part test to determine whether this newly articulated standard would protect a party seeking to avoid disclosure of highly personal information. First, a party's privacy interest must rise to a constitutional dimension by releasing "private information [which] places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Id.* at 1061, 1064. Once a party establishes a constitutional interest, the court must balance the individual's privacy interest with the public's need for disclosure. *Id.* at 1061.

In *Kallstrom,* the Sixth Circuit held plaintiffs had a constitutional privacy interest after this Court found the City's re-

lease of the Officers' addresses, phone numbers, and copies of their drivers' licenses during the *Russell* case "created a serious risk to the personal safety of the plaintiffs and those relatives named in the files." *Id.* at 1063. The court then assumed that state interests served by allowing public access to agency records were compelling, but held that the City's automatic release of this information was not narrowly tailored to serve that interest. *Id.* at 1065. Using the Sixth Circuit's framework, the Court finds the Fourteenth Amendment does not prevent the City from allowing intervenors to inspect or copy the requested information from plaintiffs' personnel files.

Intervenors have requested the home addresses of each plaintiff; summaries of investigations of plaintiffs' backgrounds; memos and reports of any assaults in which the plaintiffs were either perpetrators or victims; memos and reports related to any motor vehicle accidents in which City vehicles operated by plaintiffs were damaged or caused property damage or personal injury to others; memos and notices related to any disciplinary charges; and, answers to personal history questions.[7] Intervenors' Mot. for Summ. J. (Doc. 63) at 1 n. 1. The request specifically excludes information identifying the Officers' banking institutions and financial account numbers; personal credit card numbers; social security numbers; information about any psychological conditions the Officers may have; responses to polygraph examinations; and, "medical records" or any other recorded information exempt from mandatory disclosure under Ohio Revised Code § 149.43. Intervenors'

---

**7.** As per the Sixth Circuit's injunction, the City must provide plaintiffs with meaningful written notice of any public records request for plaintiffs' personnel files. Concerning intervenors' instant request, this lawsuit pro-

vides plaintiffs with notice and, indeed, full procedural due process, including every opportunity to argue that they have a constitutional privacy interest in the information contained in their personnel files.

Compl. (Doc. 26) at ¶ 15. Further, intervenors do not object to the City redacting the names of any minor dependents of plaintiffs unless the dependent is employed by the City, any information made confidential by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., or records which the Ohio Public Records Act would not require the City to disclose. Intervenors' Mot. for Summ. J. (Doc. 63) at 1 n. 1.

### Plaintiffs' Constitutional Privacy Interest

■ The Court finds plaintiffs do not have a constitutional privacy interest in the information requested by intervenors. Under the Sixth Circuit standard, plaintiffs must show that the release of information they wish to keep private would place them "at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Kallstrom*, 136 F.3d at 1064. The Court could fathom information contained in plaintiffs' personnel files that satisfies this stringent constitutional standard. Yet, that is not the Court's responsibility. The Sixth Circuit requires this Court to look at a "clear development of the factual circumstances" surrounding any future release of personal information from the Officers' personnel files. *Id.* at 1068. Plaintiffs have failed to provide any potentially admissible evidence to suggest that the release of any information contained in the three personnel files may place any of the plaintiffs at any risk of serious bodily harm. Nor have they identified a current "perceived likely threat." [8] This is fatal to their claims. By not identifying any real potential danger that could arise from the release of information in their personnel files, plaintiffs have failed to make a showing sufficient to establish the existence of an element essential to their case for which they carry the burden. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Further, the majority of intervenors' request focuses on each plaintiff's disciplinary records, incident complaints from citizens, and other documents detailing how each officer is performing his or her job. Although plaintiffs may wish maintain the confidentiality of their employment histories, the Constitution does not provide a shield against disclosure of potentially embarrassing or even improper activities by public servants.

■ Finally, plaintiffs' interests in their home addresses also fail to meet the stringent constitutional standard set by the Sixth Circuit. Addresses are part of the public domain. Anyone with an individual's name and either Internet access or the initiative to visit a local government office can scan county property records, court records, or voter registration records for such information as an individual's address, the exact location of his or her residence, and even a floor plan of the home. The Supreme Court has found that "[t]he interests in privacy fade when the information involved already appears on the public record." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). In this case, plaintiffs have voluntarily revealed their own identities. For instance, plaintiffs initiated this lawsuit in their own names and describe their profession in the pleadings as "undercover narcotics officers." Plaintiffs' Compl. (Doc 1) at ¶ 3; Plaintiffs' Am. Compl. (Doc. 56) at ¶ 3. Plaintiffs also

---

**8.** The Court sympathizes with plaintiffs' initial fears of retaliation from the Short North Posse. As discussed in detail below, however, plaintiffs have not developed clear and factual circumstances, outside of mere speculation, that this threat still exists. The only evidence in the record suggests, fortunately, the threat never developed.

chose to testify without a pseudonym in the Posse trial.[9] As plaintiffs have revealed their identities, their addresses are easily accessible in the public domain.

### Balancing of Interests

 Even assuming plaintiffs have a constitutional interest in the information contained in their personnel files, the balancing test described by the Sixth Circuit still weighs in favor of disclosure. Where a state action infringes upon a fundamental right, the action will be upheld only where it furthers a compelling state interest and is narrowly drawn to further that state interest. *Kallstrom,* 136 F.3d at 1064. In *Kallstrom,* the Sixth Circuit assumed that the state interests served by allowing public access to agency records were compelling, but held that the City's release of plaintiffs' personnel files to counsel for a criminal defendant did not narrowly achieve these interests. *Id.*

 Ohio's Public Records Act requires the state to make available all public records to any person unless the record falls within one of the statute's exceptions. Ohio Rev.Code § 149.43(B). The state has an interest in releasing its governmental agency records to "ensure accountability of government to those being governed." *See State ex rel. Strothers v. Wertheim,* 80 Ohio St.3d 155, 158, 684 N.E.2d 1239, 1242 (1997). In *Kallstrom,* the Sixth Circuit acknowledged "there may be situations in which the release of this type of personal information might further the public's understanding of the workings of its law enforcement agencies." *Kallstrom,* 136 F.3d at 1065. This is one of those situations. The information intervenors request details the functioning of the City's police force. The personnel files reveal, among other things, the character and background of the City's police officers, whether the officers are using City property responsibly, and whether the City is enforcing the residency requirement for City employees as required by the City's charter. The state has a compelling interest in releasing this type of information to enlighten the public about the performance of its law enforcement agencies and ensure government accountability. The importance of public access to these files as a restraint on government activity is evident from cases such as the U.S. Justice Department's civil rights action against the City concerning police practices, which is currently pending in this courthouse. *United States v. City of Columbus, OH,* CV-2-99-01097 (S.D.Ohio) (Holschuh, J.).

Further, the City's disclosure of public records, including police officer personnel files, is narrowly tailored to achieve this compelling state interest. In *Kallstrom,* the Sixth Circuit failed "to see how placing [the Officers'] personal information into the hands of the *Russell* defendants in any way increases public understanding of the City's law enforcement agency." *Id.* at 1065. The press, however, is a different entity.[10] In addressing the importance of

9. A witness may receive judicial permission to withhold his or her name, address, or place of employment if revealing the information would place the witness in danger. *See, e.g., Smith v. Illinois,* 390 U.S. 129, 134–35, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (White, J. and Marshall, J. concurring) (recognizing the safety of a witness as proper ground for limiting cross-examination). *Accord, U.S. v. Rangel,* 534 F.2d 147, 148 (9th Cir.1976); *Caldwell v. Minnesota,* 536 F.2d 272, 273–74 (8th Cir.1976); *McGrath v. Vinzant,* 528 F.2d 681, 683–84 (1st Cir.1976); *U.S. v. Cosby,* 500 F.2d 405, 407 (9th Cir.1974); *U.S. v. Ellis,* 468 F.2d 638, 639 (9th Cir.1972); *U.S. v. Alston,* 460 F.2d 48, 51–52 (5th Cir.1972); *U.S. v. Persico,* 425 F.2d 1375, 1384 (2d Cir.1970); *U.S. v. Baker,* 419 F.2d 83, 87 (2d Cir.1969); *U.S. v. Palermo,* 410 F.2d 468, 472–73 (7th Cir.1969).

10. The Court refuses to base its decision on a strict distinction between the importance of

press access to public records, the Supreme Court has observed:

> (I)n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations.

*Cox Broad.*, 420 U.S. at 491, 95 S.Ct. 1029. The *Cox Broadcasting* Court concluded that the "freedom of the press to publish [public] information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business." *Id.* at 495, 95 S.Ct. 1029. The full disclosure of these personnel files is necessary to enable the press to do its job. As nothing less than full disclosure will ensure transparency in government, the Court finds full disclosure is narrowly tailored to meet the state's compelling interest. Therefore, the Court **GRANTS** summary judgment for intervenors on their first ground for declaratory judgment.

### Second Ground: City's Denial Violates First Amendment

The intervenors seek a second declaration that the City is violating the First Amendment by denying the news organizations a state law right because they might publish accurate reports of the contents of public records. The Court agrees and grants summary judgment for intervenors on their second ground for declaratory judgment.

In its pleadings, the City admits it denied intervenors' public records request because the news organizations have "substantial capacity ... to disseminate" identifying information in plaintiffs' records "to wide and diverse audiences, including Short North Posse members or other dangerous persons who have the motive and capabilities to harm the officers or their families." Intervenors' Compl. (Doc. 26) at ¶ 17; Defendant Answer (Doc. 28) at ¶ 2. Intervenors urge the Court to review the City's actions under strict scrutiny. The cases intervenors cite for this proposition, however, neither discuss strict scrutiny nor suggest it should apply in this context. Nevertheless, the Court finds summary judgment appropriate based on a less stringent standard.

■ Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control. *Houchins v. KQED, Inc.*, 438 U.S. 1, 15–16, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (Burger, C.J., plurality opinion). The Constitution, however, assures "the public and the press equal access once the government has opened its doors." *Id.* at 16, 98 S.Ct. 2588 (Stewart, J., concurring). In this case, the doors have been opened by the Ohio Public Records Act. Thus, the issue becomes whether the City can deny intervenors their state law right to these public records because, as members of the news media, they have the ability to disseminate the information contained in plaintiffs' personnel files.

■ The Supreme Court has held that the government may not single out the press to bear special burdens without violating the First Amendment. *Minne-*

---

access to public records for the press and criminal defense attorneys. In many instances, the criminal defendant's right of access to

police personnel files may be equally compelling as that of the press.

apolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, 585–86 n. 7, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). In Minneapolis Star, the Supreme Court found that Minnesota's use tax on paper and ink violated the First Amendment for "singling out the press for taxation" that did not apply to other enterprises. Id. Courts, however, have not been hesitant to extend this rationale beyond taxation. See, e.g., Legi–Tech, Inc. v. Keiper, 766 F.2d 728, 734 (2d Cir.1985) (suggesting denial of press access to a public legislative database would face "hostile scrutiny" as singling out the press for a special burden). These decisions address concerns that "singling out the press as a whole or targeting individual members poses a particular danger of abuse by the state." Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 228, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). The threat of any burden "can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government." Minneapolis Star, 460 U.S. at 585, 103 S.Ct. 1365. Specifically, the Supreme Court worried any special burden placed on the press would "threaten to hinder the press as a watchdog of government activity." Leathers v. Medlock, 499 U.S. 439, 447, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991). The importance of protecting the press derives from "the critical role played by the press in American society." Houchins v. KQED, Inc., 438 U.S. 1, 17, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (Stewart, J., concurring). Judge Learned Hand explained:

> [The newspaper] industry serves one of the most vital of all general interests: the dissemination of news from as many different sources, and with as many different facets and colors as is possible. That interest is closely akin to, if indeed

it is not the same as, the interest protected by the First Amendment; it presupposes that right conclusions are more likely to be gathered out of a multitude of tongues than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.

United States v. Associated Press, 52 F.Supp. 362, 372 (S.D.N.Y.1943). Thus, the Supreme Court has concluded, "'an untrammeled press [is] a vital source of public information', and an informed public the essence of working democracy." Minneapolis Star, 460 U.S. at 585, 103 S.Ct. 1365, quoting Grosjean v. Am. Press Co., 297 U.S. 233, 250, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (citations omitted).

Due to these important considerations, a state-imposed burden on the press is always "subject to at least some degree of heightened First Amendment scrutiny." Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 640–41, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). When the government specially burdens the press, "the appropriate method of analysis thus is to balance the burden implicit in singling out the press against the interest asserted by the State." Minneapolis Star, 460 U.S. at 586 n. 7, 103 S.Ct. 1365. The burden "can survive only if the governmental interest outweighs the burden and cannot be achieved by means that do not infringe First Amendment rights as significantly." Id.

 In its pleadings, the City states its interest as preventing members of the press from accessing plaintiffs' personnel records because news organizations have the ability to disseminate the information to "wide and diverse audiences, including the Short North Posse." Intervenors' Compl. (Doc. 26) at ¶ 17; Defendant Answer (Doc. 28) at ¶ 2. Since the second part of the Minneapolis Star test is dispositive,

the Court finds it unnecessary to balance the City's interest with the burden implicit in singling out the press. The Court concludes the City's decision to single out the press for disparate treatment does not satisfactorily accomplish its stated purpose.

Treating the press differently will not prevent the harm the City is seeking to avoid. The City's denial of the intervenors' public records request because of their ability to disseminate information suggests that the same records would have been provided to anyone who did not have this capability. Any member of the public would have access to these records—including Short North Posse members, their friends, and their families. Silencing the press makes no difference as to whether these people have access to plaintiffs' personal information.

Further, this distinction does not prevent the press from gaining access to the materials. The news organizations could have a surrogate request the records and provide copies to the press. Even a reporter for one of the intervenors could request the records as a citizen, without revealing his or her professional affiliation, and use plaintiffs' personal information in the same manner as if the news organization had requested the records as an entity. Allowing the City to impose these arbitrary burdens threatens to eviscerate the ability of the press to serve as a restraint on government activity, poses inherent dangers to free expression, and presents great potential for censorship or manipulation.

The Court recognizes this case is unique. The timing of intervenors' request placed the City in a difficult position. The City could have released the public records to the press, but it feared this might result in a violation of plaintiffs' constitutional privacy rights or even place the Officers in physical danger. Alterna-

tively, it could deny the news organizations' request for the records and violate Ohio's Public Records Act. Admittedly, the City had little guidance from either the Sixth Circuit or this Court. In choosing to deny intervenors' request based on their ability to disseminate the information, however, the City placed a burden on the press that would not have attached to any other request for those public records. The City's arbitrary treatment of the press is not only thoroughly ineffective at achieving its objective, but also highly offensive to the First Amendment. Therefore, the Court **GRANTS** summary judgment for intervenors on their second ground for declaratory judgment.

### Third Ground: Sixth Circuit Kallstrom Opinion Is Not Binding

Intervenors further argue they are entitled to a declaration that the Sixth Circuit opinion in this case amounts to an advisory opinion since it is based on erroneous information in a less-than-complete record. This motion is denied.

As discussed below, the record has changed significantly since the Sixth Circuit issued its opinion. The Sixth Circuit, however, did not decide this case—as intervenors contend—on hypothetical facts. The panel's decision reflects the state of the record at the time it heard the case. The fact that neither party discovered nor accurately reported the contents of the documents disclosed by the City during the *Russell* trial has no impact on the authority of Sixth Circuit decision. This Court has tremendous respect for the Sixth Circuit and will not entertain further speculation that its decisions are not binding on this Court. Moreover, it is doubtful that a district court even has the authority to declare a Circuit Court decision to be void or invalid, absent a clear decision by the U.S. Supreme Court reversing the Cir-

cuit Court's holding. Therefore, the Court **DENIES** summary judgment for intervenors on their third ground for declaratory judgment.

### D. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on plaintiffs' § 1983 claim.[11] Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Sixth Circuit found plaintiffs successfully pled a prima facie case to recover under § 1983.

This Court and the Sixth Circuit, however, did not have the benefit of viewing portions of plaintiffs' personnel records until after the news organizations intervened in the case. Based upon a record consisting almost exclusively of plaintiffs' affidavits, this Court and the Sixth Circuit thought the City disclosed the Officers' addresses and phone numbers; the names, addresses, and phone numbers of immediate family members; the names and addresses of personal references; the Officers' banking institutions and corresponding account information, including account balances; plaintiffs' social security numbers; responses to questions regarding their personal lives asked during the course of polygraph examinations; and, copies of their drivers' licenses, which included their pictures and home addresses. *Kallstrom,* 136 F.3d at 1059. Relying on the accuracy of these affidavits, this Court found that the release of this personal information, in light of the Short North Posse's propensity for violence, created a serious risk to the personal safety of the plaintiffs and their family members named in the files. D. Op. and Order (Doc. 10) at 5.

It is now apparent that the City redacted most of this information before releasing plaintiffs' files to the *Russell* defendant's attorney. It is uncontroverted that the exhibits attached to intervenors' motion for summary judgment are accurate copies of plaintiffs' personnel records as released by the City. Therefore, the Court makes the following findings to clarify the information actually released by the City to defense counsel during the *Russell* trial.

### Revised Findings of Fact

With respect to Officer Kallstrom's file, the City redacted 13 pages to delete any references to her current home address and phone number. The only residential addresses listed for Officer Kallstrom were an Akron-area address listed on an expired driver's license and a list of previous residences she included on a 1986 application to join the City's police force. She no longer lives at any of those addresses. As for immediate family members, the file showed that Officer Kallstrom's parents are deceased; that she was unmarried; and, she had no children or dependents. While the records included the names of her brother, sister, and sister-in-law and their addresses, the information appeared on forms from March 1986 and did not include any home phone numbers. Her relatives do not currently live at any of the listed addresses.

The City also redacted Officer Householder's personnel files to eliminate any references to his address or phone number. The copy of his driver's license was rendered illegible. The file includes the names and addresses of ten relatives on forms dated September 1980 and January 1981. None of the records disclosed any home phone numbers for his relatives.

---

**11.** The applicable legal standard for summary judgment is set forth above.

The City also redacted every home address and phone number listed for Officer Coelho since he joined the City police force in 1981. A copy of his driver's license also was rendered illegible. Addresses are listed for eight relatives, but the most recent is from 1981. No home phone numbers are listed for any of his relatives.

### Summary Judgment

 In *Kallstrom,* the Sixth Circuit identified two threshold issues in determining whether plaintiffs' constitutional rights to privacy were violated. Both must be proven before plaintiffs can recover under § 1983. First, plaintiffs' privacy interests in the information must be "of a constitutional dimension." *Kallstrom,* 136 F.3d at 1062. If plaintiffs have a constitutional privacy right, the court then undertakes to balance plaintiffs' privacy interest and the public's interest in disclosure. *Id.* at 1061. Second, state action, an element of any § 1983 claim, requires a link between the City and the party who might commit the violent act. *Id.* at 1066. In *Kallstrom,* the Sixth Circuit used the state-created-danger theory to satisfy the state action requirement. *Id.* Both elements essentially require the same proof. In order to have a constitutional privacy interest and satisfy the state-created-danger theory, plaintiffs must prove that the information released by the City posed a very real threat to the physical safety of plaintiffs and their families. Plaintiffs have not raised any genuine issues of material fact as to either the content released by the City or its effects. Therefore, this Court decides as a matter of law that plaintiffs do not have a constitutional privacy interest in the information disclosed by the City and its release did not amount to state action.

### Constitutional Privacy Interest

To recover under § 1983, plaintiffs must prove the City deprived them of a "right secured by the Constitution and the laws." *Kallstrom,* 136 F.3d at 1060 (quoting *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The Sixth Circuit determined a person has a constitutional privacy interest "where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Kallstrom,* 136 F.3d at 1064.

Defendant contends the information released in plaintiffs' personnel files is innocuous since it redacted any reference to plaintiffs' current addresses and any remaining information is ten to fifteen years old. Through its own motion and by adopting relevant portions of intervenors' motion for summary judgment, defendant argues that the redacted, stale information disclosed during the Posse trial did not create a "substantial risk of serious bodily harm" to plaintiffs or their families.

Plaintiffs counter with an abundance of largely inadmissible, irrelevant speculation concerning the alleged harm to the Officers. Rule 56(e) requires testimony in support of or in opposition to summary judgment to be made on personal knowledge "set[ting] forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). As many of plaintiffs' assertions would not be admissible in evidence, they do not stand as a barrier to summary judgment.

For example, in their memoranda in opposition, plaintiffs direct the Court's attention to plaintiffs' deposition testimony. Plaintiffs cite Officer Kallstrom's testimony that she looked through the materials during the trial and saw "information like my address, my brother's and sister's address, personal references that I used when I applied for the job, their names,

addresses, a copy of my driver's license...." Plaintiffs' Mem. in Opp'n (Doc. 69) at 7. Plaintiffs attempt to use this deposition testimony to establish a genuine issue of material fact as to the contents of the personnel records released by the City.

■ Plaintiffs' argument, however, fails under the Best Evidence Rule. *See* Fed.R.Evid. 1002. The Best Evidence Rule states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by an Act of Congress." *Id.* Other evidence of the contents of a writing is admissible only if (1) the originals have been lost or destroyed; (2) the original is not obtainable; (3) the original is in possession of an opponent; or, (4) where the writing is not closely related to a controlling issue. *See* Fed.R.Evid. 1004. Plaintiffs do not dispute that the exhibits attached to intervenors' motion for summary judgment are copies of the files as disclosed by the City during the *Russell* trial. Further, they do not contest the authenticity of the documents. They only seek to prove the contents of the documents through the deposition testimony of Officer Kallstrom. The Federal Rules of Evidence expressly prohibit proof of the contents of a document through any means other than the document itself where none of the exceptions apply. This is the case here. Therefore, Officer Kallstrom's deposition testimony regarding the contents of her personnel file fails to create a genuine issue of material fact.

Plaintiffs also attempt to show the risk to police officers from disclosure of personal information by attaching articles and transcripts from popular media sources to their pleadings. As discussed above, this is inadmissible hearsay and has been stricken from the record.

Plaintiffs' reliance on this inadmissible testimony is even more significant when viewed in the context of this case. It has been nearly six years since plaintiffs' personnel files were viewed by the *Russell* defendants. Fortunately, during this time, no evidence has developed that Short North Posse members or anyone associated with them have done anything to place plaintiffs at a substantial risk of serious harm. In their depositions, plaintiffs struggle to identify any harm that resulted from the City's release of their personal information. Officer Kallstrom cites a single mysterious phone call that she may be able to attribute to the disclosure of her personnel file. Kallstrom Dep. at 18–22. Similarly, Officer Coelho identifies several unexplained phone calls where he could hear someone breathing on the line. Coelho Dep. at 23. Officer Householder also recalls several suspicious phone calls, but cannot link them to the Posse. Householder Dep. at 20–21. Even when drawing all inferences in favor of the plaintiffs, this speculation does not amount to a sufficient evidentiary showing of substantial harm.

Finally, plaintiffs contend the information actually released in the files placed plaintiffs and their family members at substantial risk. For example, plaintiffs suggest a sloppily redacted address that still reveals Officer Kallstrom's zip code narrows "the search any possible enemy would have to make." Plaintiffs' Mem. in Opp'n (Doc. 69) at 10. Further, plaintiffs assert that one of Officer Kallstrom's sisters lives in Columbus "making her an immediately available target." *Id.* These bald, conclusory statements do not enable plaintiffs to survive summary judgment. An opposing party must make a showing to establish the existence of an element essential to its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. As plaintiffs have failed to identify any potentially ad-

missible evidence showing that defendant's actions placed them at a substantial risk of serious bodily harm, the Court finds as matter of law that plaintiffs did not have a constitutional privacy interest in the information disclosed by the City.

### State–Created–Danger Theory

In *Kallstrom*, the Sixth Circuit satisfied the state action requirement for § 1983 claims by applying the state-created-danger theory. *Kallstrom*, 136 F.3d at 1066. This theory attributes the potentially violent actions of a private actor, such as the Short North Posse, to the City where the City's actions substantially increase the likelihood that a private actor "would deprive [the Officers] of their liberty interest in personal security." *Id.* The Sixth Circuit has never held a state or state actor liable under the state-created-danger theory. *Id.* Other circuits, however, have applied the theory. The Tenth Circuit has found that it is not enough that plaintiff show the state increased the danger of harm from third persons, but plaintiff also must show that the state acted with the requisite degree of culpability in failing to protect the plaintiff. *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1238 (10th Cir.1999). Plaintiffs' claim "must be predicated on reckless or intentionally injury-causing state action which 'shocks the conscience' of federal judges." *Id.* Most courts require at least a showing of deliberate indifference before § 1983 liability will attach. *See Morse v. Lower Merion Sch. District*, 132 F.3d, 902 908 (3rd Cir.1997); *L.W. v. Grubbs*, 92 F.3d 894, 896 (9th Cir.1996).

 In this case, the Court finds the City's release of redacted personnel files pursuant to a valid public records request does not "shock the conscience" or amount to deliberate indifference on the part of defendant. As discussed above, the infor-

mation that may have placed plaintiffs or their family members at harm either was redacted or out of date. Indeed, the City appears to have gone to great efforts to redact addresses and phone numbers on more than 30 pages of plaintiffs' personnel files before disclosing them. For these reasons, the state-created-danger theory does not apply. Therefore, there is no state action as required under § 1983.

## IV. CONCLUSION

The Court appreciates the need to protect the health and safety of law enforcement officials and their families. But the health and safety of this democracy depend on a press that can function without additional burdens being imposed based on its ability to publish information concerning government activities.

Based on the foregoing, plaintiffs' motion to dismiss intervenors' claims as moot is hereby **DENIED**; intervenors' motion to strike is hereby **GRANTED**; intervenors' motion for summary judgment in their declaratory judgment action is hereby **GRANTED** on grounds one and two and **DENIED** on ground three; and, defendant City's motion for summary judgment is hereby **GRANTED**.

Pursuant to the Order of the Sixth Circuit Court of Appeals, this Court enters a limited **PERMANENT INJUNCTION** against defendant City of Columbus requiring it to provide plaintiffs with meaningful written notice prior to its release of any information that could potentially threaten the personal security of plaintiffs or their families. Specifically, the City must notify the Officers of a request for their addresses, phone numbers, and copies of their drivers' licenses, or the names, addresses, and phone numbers of their family members, prior to releasing this information so that the Officers might have the opportunity to invoke their constitu-

tionally protected rights to privacy and personal security. *See Kallstrom,* 136 F.3d at 1067.

The Clerk shall remove documents 63, 73, and 79 from the Court's pending motions list and this case from the Court's pending cases list.

**IT IS SO ORDERED.**